# Exhibit 2

6/17/2022 4:20 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-001610
Adrian Rodriguez

**CAUSE NO. D-1-GN-22-001610**

| | | |
|---|---|---|
| **NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE, Plaintiffs** | § § § § § | **IN THE DISTRICT COURT** |
| **v.** | § § § | |
| **ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS, LLC, PLJR HOLDINGS, LLC, CAROL JONES, DAVID JONES, PQPR HOLDINGS, LLC, JLJR HOLDINGS LIMITED, LLC, AEJ HOLDINGS, LLC, AEJ TRUST 2018,** | § § § § § § § § § § § | **TRAVIS COUNTY, TEXAS** |
| **Defendants** | § § | **200th DISTRICT COURT** |
| **DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTO-PARISI, CARLOS M. SOTO, JILLIAN SOTO, WILLIAM SHERLACH, ROBERT PARKER, WILLIAM ALDENBERG, Intervenors** | § § § § § § § § § § | |
| **v.** | § § | |
| **ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS, LLC, PLJR HOLDINGS, LLC, CAROL JONES, DAVID JONES, PQPR HOLDINGS, LLC, JLJR HOLDINGS LIMITED, LLC, AEJ HOLDINGS, LLC, AEJ TRUST 2018, Defendants** | § § § § § § § § § § § | |

1

## ORIGINAL PETITION IN INTERVENTION

### INTRODUCTION

After Alex Jones was sued for claiming the shooting of twenty-six children and educators at Sandy Hook Elementary School was a hoax, Jones diverted his assets to shell companies owned by insiders like his parents, his children, and himself. Jones stashed away millions of dollars from his fortune in this manner. The Texas Uniform Fraudulent Transfer Act prohibits defendants from playing shell games to shield assets from their creditors. And it allows creditors like these families to void such fraudulent transfers. The families of five children and two educators and one first responder to the shooting, all of whom brought suit against Jones in Connecticut, now join other Sandy Hook families who brought suit against Jones in Texas in asserting TUFTA claims against Jones and his insiders.

### PARTIES

**Intervenors**

1.      Intervenors David Wheeler and Francine Wheeler are the parents of first-grader Benjamin Wheeler. Benjamin was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

2.      Intervenors Jacqueline Barden and Mark Barden are the parents of first-grader Daniel Barden. Daniel was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

3.     Intervenors Nicole Hockley and Ian Hockley are the parents of first-grader Dylan Hockley. Dylan was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

4.     Intervenor Jennifer Hensel is the parent of first-grader Avielle Richman. Avielle was killed in the Sandy Hook Elementary School shooting on December 14, 2012. Ms. Hensel resides in Connecticut.

5.     Intervenor Donna Soto is the mother, and plaintiffs Carlee Soto-Parisi, Carlos M. Soto, and Jillian Soto are the siblings, of first-grade teacher Victoria Leigh Soto. Vicki was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

6.     Intervenor William Sherlach was the spouse of Mary Sherlach, the school psychologist. Mary was killed in the Sandy Hook Elementary School shooting on December 14, 2012. Mr. Sherlach resides in Connecticut.

7.     Intervenor Robert Parker is the father of first-grader Emilie Parker. Emilie was killed in the Sandy Hook Elementary School shooting on December 14, 2012. He resides in Washington state.

8.     Intervenor William Aldenberg was a first responder to Sandy Hook Elementary School on December 14, 2012. He resides in Massachusetts.

9.     This Petition in Intervention will refer to these seven families and one first responder as the "Intervenors" or the "Connecticut Intervenors."

**The Jones Defendants**

10.     Defendant Alex E. Jones is a resident of Austin, Texas. He hosts radio and web-based news programming, including "The Alex Jones Show," and he owns Free Speech Systems, LLC, which operates the website infowars.com. Jones has filed an

answer and made an appearance in this lawsuit may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

11.     Defendant Free Speech Systems, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. Free Speech Systems, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

12.     This Petition in Intervention will refer to Alex Jones and Free Speech Systems, LLC as the "Jones Defendants."

13.     At all times relevant to this Petition in Intervention, these Jones Defendants operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

**The Jones Transferees**

14.     Defendant PQPR Holdings Limited LLC is a Nevada limited-liability company. PQPR Holdings Limited LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

15.     Defendant JLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. JLJR Holdings, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

16.     Defendant PLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. PLJR Holdings, LLC has filed an answer and made an appearance in this

lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

17.    Defendant Carol Jones is a resident of Austin, Texas. She is Alex Jones's mother and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. She can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever she can be found.

18.    Defendant David Jones is a resident of Austin, Texas. He is Alex Jones's father and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. He can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever he can be found.

19.    Defendant PQPR Holdings, LLC is an entity that has been previously identified by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. To date, Intervenors have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

20.    Defendant JLJR Holdings Limited, LLC is an entity listed as a member of PQPR Holdings Limited, LLC and PLJR Holdings, LLC. To date, Intervenors have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

21.    Defendant AEJ Holdings, LLC is an entity that has been identified previously by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. AEJ Holdings, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

22.     Defendant AEJ Trust 2018 is an entity that has been identified previously by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. AEJ Trust 2018 has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

23.     This Petition in Intervention will refer to PQPR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; Carol Jones; David Jones; PQPR Holdings, LLC; JLJR Holdings Limited, LLC; AEJ Holdings, LLC; and AEJ Trust 2018 as the "Jones Transferees."

24.     At all times relevant to this Petition in Intervention, the Jones Transferees and Defendant Alex Jones operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

## DISCOVERY-CONTROL PLAN

25.     Discovery should be conducted under Level 3 case of the Texas Rules of Civil Procedure.[1] Intervenors seek monetary relief over $1,000,000.[2]

## JURISDICTION AND VENUE

26.     The amount in controversy exceeds the Court's minimum jurisdictional requirements.

---

[1] *See* Tex. R. Civ. P. 190.

[2] *See* Tex. R. Civ. P. 47. Plaintiffs may also seek injunctive relief, in which case they may request expedited discovery.  *See* Tex. R. Civ. P. 680.

27.     Venue is proper in Travis County because that's where certain Defendants resided when the cause of action accrued and because all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County.[3]

**BACKGROUND**

28.     Alex Jones, through his media company Free Speech Systems dba InfoWars, became a national figure by pushing conspiracy theories designed to go viral. Jones branded himself by claiming the Oklahoma City bombing was a government-sponsored hoax; the 9/11 attacks were a government-sponsored hoax, and so on. Leveraging his "news" content, Jones made millions by marketing and selling survivalist gear, herbal supplements, and various other products at a huge mark-up. The sale of these types of products on the InfoWars website and elsewhere enabled the Jones Defendants to earn a fortune.

## The Connecticut Intervenors sue the Jones Defendants

29.     In 2018, the Connecticut Intervenors sued the Jones Defendants for false light, defamation, intentional infliction of emotional distress, and violation of the Connecticut Unfair Trade Practices Act, based on lies Alex Jones and Free Speech Systems, LLC spread through Infowars.com, through social media re-broadcasts of his publications, and through radio re-broadcasts of his publications (the "Connecticut Cases").[4] The Intervenors allege, and have finally and conclusively

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 15.002.

[4] These consolidated actions, now pending in the Connecticut Judicial District of Waterbury are: *Lafferty, Erica, et al. v. Jones, Alex Emric, et al.,* No. UWY-CV-18-0604636-S; *Sherlach, William v. Jones, Alex Emric, et al.,* No. UWY-cv-18-064637-S; and *Sherlach, et al. v. Jones, Alex Emric, et al.,* No. UWY-CV-18-064638-S.

7

established,[5] that Alex Jones spread lies about them to an audience of millions over a period of approximately five years.

30.     In June 2019, the Connecticut Superior Court sanctioned Alex Jones and Free Speech Systems, LLC for prolonged discovery abuses. The Connecticut Supreme Court granted interlocutory review of the sanctions ruling and affirmed in all respects. *Lafferty v. Jones*, 336 Conn. 332 (2020), *cert denied*, 141 S. Ct. 2467 (2021). Despite the June 2019 sanction, the Jones Defendants continued to abuse the judicial process. In November 2021, the Connecticut Superior Court entered a disciplinary default against the Jones Defendants. Even following the default sanction, the Jones Defendants continued to abuse the judicial process. In March 2022, Jones refused to attend his court-ordered deposition, resulting in a contempt finding.

31.     After cases were filed in Texas by other Sandy Hook families whom Jones had defamed (the "Texas Cases"), and by the Connecticut Intervenors, the Jones Defendants started diverting their assets. From 2018 to 2021, for example, Alex Jones personally drew about $18 million from this active company, Free Speech Systems LLC. These draws were in addition to his yearly salary, which exceeded $600,000, and taken while Free Speech Systems operated at a net loss in the millions each of those years.

32.     Jones apparently drew this $18 million while his company, Free Speech Systems, was insolvent. On November 18, 2020, a company named PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt Free Speech Systems owes to PQPR. The supposed debt allegedly began accruing years earlier

---

[5] The Connecticut Superior Court entered a disciplinary default against Alex Jones and Free Speech Systems, LLC on November 15, 2021 (DN 574). As a result of that default, all of the Connecticut Intervenors' allegations are established as true, and Jones and Free Speech Systems, LLC have no further right to challenge them in the trial court.

as part of an arrangement where Free Speech Systems sells PQPR's products on the InfoWars website. Under this claimed arrangement, PQPR was to be reimbursed for the costs of the products and receive 70% of the sales revenue while Free Speech Systems retained the other 30%. In practice, however, Free Speech Systems supposedly kept 100% of the revenue for about seven years and did not pay for the goods PQPR provided—to the point where a $54 million debt had accumulated. All the while, PQPR not only supplied Free Speech Systems with more products to sell but also paid Free Speech Systems millions of dollars a year to advertise on the InfoWars website. PQPR still supplies the Jones Defendants with products to sell and pays for advertising on the website.

33.     So why would an independent business like PQPR continue to engage in such questionable transactions?

34.     Because PQPR is not actually an independent business. On paper, it's obviously an insider of the Jones Defendants. It is owned and operated directly or indirectly by Jones, his parents, and his children through an alphabet soup of shell entities like JLJR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; PQPR Holdings, LLC; AEJ Holdings, LLC; and AEJ Trust 2018. In actuality, it is simply an alter ego of Alex Jones. And any income PQPR receives—including from sources like the Jones Defendants—goes to Alex Jones and these Jones Transferees.

35.     After the Texas and Connecticut Cases began, the Jones Defendants started transferring large sums of money to the Jones Transferees. In the summer of 2021, as defaults were entered in Texas and a default in Connecticut appeared imminent, Free Speech Systems was transferring between $11,000 per day and $11,000 per week plus 60–80% of Free Speech Systems' sales revenue to PQPR. Free Speech Systems claims these payments are part of a "financial disentanglement between the two companies[.]"

In reality, they are transfers designed to siphon off the Jones Defendants' assets to make them judgment-proof.

36.   This fact is only confirmed by the jaw-dropping amount in transfers the Jones Defendants made while the Texas Cases and Connecticut Cases have been pending. In 2021 alone, the Jones Defendants transferred tens of millions more than it cost to operate that year out of Free Speech Systems, LLC.

## CAUSES OF ACTION

37.   The Connecticut Intervenors assert fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act to void transfers between the Jones Defendants and the Jones Transferees. Texas enacted TUFTA to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach.[6] Through TUFTA's statutory scheme, creditors may seek recourse for fraudulent transfers of assets or property.[7] The Connecticut Intervenors are creditors entitled to recourse under TUFTA because the Jones Defendants engaged in fraudulent transfers and conspired to commit fraudulent transfers.[8]

## Count 1—Fraudulent Transfer with actual intent to hinder, delay, or defraud under § 24.005(a)(1)

38.   The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

---

[6] *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).

[7] *Sargeant v. Al Saleh*, 512 S.W.3d 399, 411–12 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) (citing cases).

[8] *See* Tex. Bus. & Com. Code § 24.002 (defining "creditor" as a person who has a "claim" and "claim" as a right to payment including whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed); *see also Bank of Am., N.A. v. Fulcrum Enterprises, LLC*, 20 F. Supp. 3d 594, 601 (S.D. Tex. 2014) (explaining that a person my bring a TUFTA action as a creditor of the transferor by virtue of a legal action, pending and unliquidated at the time of transfer).

39.     The Jones Defendants are liable for engaging in fraudulent transfers as to present and future creditors under § 24.005(a)(1).[9] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor.[10] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[11]

40.     The Jones Defendants engaged in fraudulent transfers under this standard. During the Connecticut Cases—while the Connecticut Intervenors were creditors—the Jones Defendants transferred millions of dollars from Free Speech Systems for reasons unrelated to Free Speech Systems' business operations. In 2021 alone, they transferred from Free Speech Systems tens of millions more than it cost to operate that year.

41.     Transfers by the Jones Defendants while the Connecticut Cases were pending also include payments to insiders, like Alex Jones himself. From 2018 to 2021, for example, Jones apparently drew $18 million from Free Speech Systems, even though it was insolvent and operating at a net loss each of those years. These draws were in addition to (and about 30 times greater than) Jones's yearly salary.

42.     And since the Connecticut Cases began, the Jones Defendants also transferred large sums to other insiders, like the Jones Transferees. These sums include money the Jones Defendants started regularly transferring from Free Speech Systems to

---

[9] Tex. Bus. & Com. Code § 24.005(a)(1) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;").

[10] *Id.*

[11] *Id.*

insider PQPR. Specifically, PQPR started receiving as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. These payments are allegedly to pay just the interest on the fake $54 million obligation to PQPR, which the Jones Defendants decided that Free Speech incurred just after it became clear that the Connecticut cases would proceed to trial. [12] All the while the Jones Defendants retained possession and control of these money transfers and obligations, as the money PQPR receives from Free Speech Systems goes directly and indirectly to insiders like Alex Jones, his parents, and his children through some or more of the shell entities named as the Jones Transferees.

43.     These transfers and obligations that the Jones Defendants made and incurred were done with the actual intent to hinder, delay, or defraud their creditors—including the Connecticut Intervenors. That truth becomes especially glaring considering the badges of fraud surrounding these transfers and obligations.[13] Those badges include, for example, that the transfers and obligations were made to insiders who retained possession and control over the property; the transfers and obligations were concealed and made while the Texas Cases and Connecticut Cases were pending and while the Jones Defendants were insolvent; and that past and future transfers to PQPR will eliminate substantially all of the Jones Defendants' assets—as these essential assets paid to insider

---

[12] Less than a month after the Superior Court in Connecticut green-lighted the Connecticut cases to proceed when it denied a stay of the action, PQPR first filed a UCC Financing Statement claiming a security interest in Free Speech Systems, LLC's assets.

[13] Tex. Bus. & Com. Code § 24.005(b) ("(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.").

and supposed secured creditor PQPR will be subsequently transferred to insiders like Alex Jones, his parents, and his children through the Jones Transferees.

44.     The Jones Defendants are thus liable under § 24.005(a)(1) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Jones and the Jones Transferees as transferees. Among the remedies the Connecticut Intervenors seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[14]

## Count 2—Fraudulent Transfer without receiving reasonably equivalent value under § 24.005(a)(2)

45.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

46.     The Jones Defendants are liable for engaging in fraudulent transfers as to present and future creditors under § 24.005(a)(2).[15] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and either (1)  the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor

---

[14] Tex. Bus. & Com. Code § 24.008.

[15] Tex. Bus. & Com. Code § 24.005(a)(2) "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.").

were unreasonably small in relation to the business or transaction; or (2) the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[16] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[17]

47.     Under these standards the Jones Defendants committed fraudulent transfers as to the Connecticut Intervenors. While the Connecticut Cases were pending— that is, while the Connecticut Intervenors were their creditors—the Jones Defendants transferred millions of dollars from Free Speech Systems without receiving reasonably equivalent value in exchange, and while the Jones Defendants' assets were unreasonably small. Moreover, the Jones Defendants incurred millions of dollars in obligations they intended or reasonably should have believed they would be unable to pay as they became due.

48.     For instance, in 2021 the Jones Defendants transferred from Free Speech Systems tens of millions more than it cost to operate the company. These transfers were unrelated to operating the business and thus weren't in exchange for reasonably equivalent value. And these transfers far exceeded Free Speech Systems' assets—and any of the Jones Defendants for that matter—which were unreasonably small compared to the millions transferred away.

49.     And from 2018 to 2021, the Jones Defendants also transferred from Free Speech Systems to Alex Jones about $18 million on top of the already substantial salary he received. Of course, these $18 million in draws weren't for reasonably equivalent value,

---

[16] *Id.*

[17] *Id.*

especially given that Free Speech Systems was supposedly operating at a loss at that time and allegedly had other substantial debts to insider PQPR it hadn't been paying for years. And these $18 million in transfers virtually eliminated Free Speech Systems' remaining assets, which were already unreasonably small compared to the $18 million that had been transferred.

50.     And around the time that default judgments were rendered against the Jones Defendants in the Connecticut Cases and Texas Cases, the Jones Defendants supposedly incurred an obligation to insider PQPR to pay the interest on the fake $54 million debt to PQPR. (Until the default judgments entered, Free Speech Systems didn't pay anything on its supposed debt to PQPR.)  Although Free Speech Systems was supposedly paying only interest, it paid as much as $11,000 per day *plus 60–80% of its sales revenue*. Incurring such a hefty obligation to cover only the interest on an alleged debt to an insider is not for reasonably equivalent value. And the Jones Defendants intended to incur or believed or reasonably should have believed that Free Speech Systems was incurring, debts beyond its ability to pay as they became due. After all, given that 100% of Free Speech Systems' sales revenue was already too little to cover its operating expenditures, counting on only 20–40% of sales revenue to cover operating expenditures would be quixotic. The Jones Defendants knew or should have known their new obligation to insider PQPR—which is directly and indirectly run by and benefits Alex Jones, his parents, and his children through the Jones Transferees—is beyond their ability to pay.

51.     This of course rests against the backdrop of the false $54 million obligation Free Speech Systems now claims it owes PQPR. Free Speech Systems apparently did not recognize any obligation to PQPR before the Connecticut and Texas Cases. Only after it

was clear that the Connecticut Cases would move forward to trial did any evidence of an obligation by Free Speech Systems to PQPR surface. That Free Speech Systems speciously and needlessly agreed to take on a $54 million obligation to an insider is not an obligation in exchange for reasonably equivalent value. And it's an obligation the Jones Defendants apparently intended to incur or believed or reasonably should have believed they would incur and would be beyond their ability to pay as they became due.

52.     The Jones Defendants are thus liable under § 24.005(a)(2) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[18]

## Count 3—Fraudulent Transfer without receiving reasonably equivalent value under § 24.006(a)

53.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

54.     The Jones Defendants are liable for engaging in fraudulent transfers as to present creditors under § 24.006(a).[19] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the

---

[18] Tex. Bus. & Com. Code § 24.008.

[19] Tex. Bus. & Com. Code § 24.006(a) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.").

obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[20]

55.    The Jones Defendants also committed fraudulent transfers under this standard. While the Connecticut Intervenors were creditors and while the Jones Defendants were insolvent, the Jones Defendants transferred millions of dollars without receiving reasonably equivalent value. These transfers include the tens of millions transferred from Free Speech Systems in 2021 that were unrelated to its operation. They also include $18 million that Jones drew from his business, Free Speech Systems. And they include the Jones Defendants' payments on just the interest on an alleged $54 million debt Free Speech Systems owes insider PQPR—payments that include as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. As explained in prior sections, none of these transfers and obligations were in exchange for reasonably equivalent value. And all were apparently made and incurred while the Jones Defendants were insolvent—or they became insolvent as a result of these transfers and obligations.

56.    The Jones Defendants are thus liable under § 24.006(a) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and

---

[20] *Id.*

the Jones Transferees the value of the transfers they received from the Jones Defendants.[21]

## Count 4—Fraudulent Transfer without receiving reasonably equivalent value under § 24.006(b)

57.    The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

58.    The Jones Defendants are liable for engaging in fraudulent transfers as to present creditors under § 24.006(b).[22] A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.[23]

59.    The Jones Defendants engaged in fraudulent transfers under this standard. After the Connecticut Intervenors' claims against the Jones Defendants arose, the Jones Defendants started repaying an alleged debt to insider PQPR, which is owned directly and indirectly by Alex Jones, his parents, and his children through various entities—the Jones Transferees. Moreover, income that PQPR receives from Free Speech Systems, for example, is directly and indirectly paid to Alex Jones, his parents, and his children though the Jones Transferees. The Jones Defendants made these transfers to pay off this antecedent debt to insider PQPR directly (and Alex Jones and the Jones Transferees indirectly) while they were insolvent. And the Jones Transferees, including PQPR, had

---

[21] Tex. Bus. & Com. Code § 24.008.

[22] Tex. Bus. & Com. Code § 24.006(b) ("(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.").

[23] *Id.*

reasonable cause to believe that the Jones Defendants were insolvent at the time. After all, the Jones Defendants allegedly failed to the pay the supposed debt to PQPR for years to the point where the debt reached $54 million and exceeded the Jones Defendants' assets.

60.     And to the extent that the $18 million Jones drew from Free Speech Systems between 2018 and 2021 were payments for antecedent debts, such payments are also fraudulent transfers under this section. These transfers were made after the Connecticut Intervenors' claims against the Jones Defendants arose. As Free Speech Systems' sole owner, Alex Jones was its insider. And as its sole owner, Alex Jones had reasonable cause to believe that Free Speech Systems was insolvent—and in fact was insolvent—when these transfers to him were made.

61.     The Jones Defendants are thus liable under § 24.006(b) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[24]

**Count 5—Conspiracy to commit fraudulent transfers**

62.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

---

[24] Tex. Bus. & Com. Code § 24.008.

63.    The Jones Defendants and the Jones Transferees are liable for conspiracy to commit fraudulent transfers.[25] The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt unlawful acts; and (5) proximately resulting in injury.[26]

64.    Here, the Jones Defendants and the Jones Transferees conspired to commit fraudulent transfers. As the prior paragraphs establish, the Jones Defendants and the Jones Transferees conspired to siphon the Jones Defendants' assets away to avoid paying the Connecticut Intervenors in the Connecticut Cases. The Jones Defendants and the Jones Transferees then proceeded with the course of action of transferring millions of dollars in assets away from the Jones Defendants and having the Jones Defendants incur millions of dollars in obligations to its insider Jones Transferees, who weren't sued in the Connecticut Cases. These overt acts are unlawful fraudulent transfers under TUFTA. And they proximately resulted in injury to the Connecticut Intervenors. Diverting assets away from the Jones Defendants to the Jones Transferees impairs the Connecticut Intervenors' ability to collect on their judgments.

## CONDITIONS PRECEDENT

65.    All conditions precedent to the Connecticut Intervenors' claims for relief have been performed or have occurred or have been waived.

---

[25] *In re Northstar Offshore Grp., LLC,* 616 B.R. 695, 743 (Bankr. S.D. Tex. 2020) (citing *Ramirez v. Rodriguez (In re Ramirez),* 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) and *Biliouris v. Sundance Res., Inc.,* 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008)).

[26] *Id.* at 743–44.

### ATTORNEY'S FEES AND INTEREST

66.     The Connecticut Intervenors seek costs and attorney's fees under § 24.013 of the Texas Uniform Fraudulent Transfer Act.[27]

67.     The Connecticut Intervenors further seek pre- and post-judgment interest on the amount of any judgment as allowed by law.

### REQUEST FOR DISCLOSURE

68.     Defendants are requested to disclose, within 50 days of the service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

### TRIAL BY JURY

69.     The Connecticut Intervenors respectfully request a trial by jury.

### NOTICE OF INTENT

70.     Under Rule 193.7, Connecticut Intervenors intend to use any documents produced in response to written discovery requests at trial and in any pretrial matters in the litigation.[28]

### PRAYER

For these reasons, Connecticut Intervenors respectfully request that Jones Defendants be cited to appear and answer and that judgment be awarded to Connecticut Intervenors for the following:

1)      avoidance of transfers or obligations to the extent necessary to satisfy Connecticut Intervenors' claims;

2)      an attachment or any other provisional remedy against the assets transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings;

---

[27] Tex. Bus. & Com. Code § 24.013.

[28] Tex. R. Civ. P. 193.7.

3)    an injunction—including temporary and permanent injunctive relief—against further disposition by the debtors or transferees, or both, of the assets transferred or of other property;

4)    an appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

5)    to levy execution on assets transferred or their proceeds;

6)    actual damages, including direct, indirect, special, incidental, and consequential damages;

7)    exemplary damages;

8)    costs and reasonably attorney's fees as are equitable and just;

9)    pre- and post-judgment interest;

10)   any other relief the circumstances may require.

Respectfully submitted

**CAIN & SKARNULIS PLLC**

By:     */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
Telephone:   (512) 477-5000
Fax:          (512) 477-5011
Email: rchapple@cstrial.com

**BYMAN & ASSOCIATES PLLC**

By:     */s/ Randy W. Williams*
Randy W. Williams
State Bar No. 21566850
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
Telephone: (281) 884-9262
Email: rww@bymanlaw.com

**ATTORNEYS FOR CONNECTICUT INTERVENORS**

22

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Original Petition in Intervention has been forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this 17th day of June 2022, as follows:

| Method of Service | Parties | Counsel |
|---|---|---|
| *Electronic Service* | Defendants<br>PQPR Holdings Limited LLC<br><br>JLJR Holdings, LLC<br><br>PLJR Holdings, LLC | Stephen W. Lemmon<br>lemmon@slollp.com<br>**STREUSAND, LANDON, OZBURN & LEMMON, LLP**<br>1801 S. MoPac Expressway<br>Suite 320<br>Austin, TX 78746<br>512-236-9900<br>512-236-9904—Fax |
| *Electronic Service* | Defendants<br>Alex E. Jones<br><br>Free Speech Systems, LLC<br><br>AEJ Holdings, LLC<br><br>AEJ Trust 2018 | Andino Reynal<br>areynal@frlaw.us<br>**THE REYNAL LAW FIRM, LLP**<br>917 Franklin Street<br>Suite 600<br>Houston, TX 77002<br>713-228-5900<br>713-820-6981—Fax |

_____/s/ Ryan E. Chapple_____
Ryan E. Chapple

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Arlana Prentice on behalf of Ryan Chapple
Bar No. 24036354
aprentice@cstrial.com
Envelope ID: 65565959
Status as of 6/30/2022 12:03 PM CST

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Federico Reynal | 24060482 | areynal@frlaw.us | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicholas Lawson | | nick.lawson@mhllp.com | 6/17/2022 4:20:23 PM | SENT |
| Avishay Moshenberg | | avi.moshenberg@mhllp.com | 6/17/2022 4:20:23 PM | SENT |
| Matthew Caldwell | | matthew.caldwell@mhllp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: PQPR HOLDINGS LIMITED LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Lemmon | | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: PLJR HOLDINGS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Lemmon | | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: JLJR HOLDINGS LLC

| Name |
|------|
| Stephen Lemmon |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Arlana Prentice on behalf of Ryan Chapple
Bar No. 24036354
aprentice@cstrial.com
Envelope ID: 65565959
Status as of 6/30/2022 12:03 PM CST

Associated Case Party: JLJR HOLDINGS LLC

| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
|---|---|---|---|---|