# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Free Speech Systems LLC | § | Subchapter V |
| | § | |
| Debtor. | § | Case No. 22-60043 (cml) |

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

In re:

NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE,

     Plaintiffs,

v.

ALEX E. JONES, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED, LLC, PLJR HOLDINGS, LLC, PLJR HOLDINGS LIMITED, LLC, CAROL JONES, DAVID JONES, AEJ HOLDINGS, LLC AEJ TRUST 2019,

     Defendants.

DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NCOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTOPARISI, CARLOS M. SOTO, JILLIAN SOTO, WILLIAM SHERLACH, ROBERT PARKER, WILLIAM ALDENBERG,

     Intervenors.

ADVERSARY NO. 22-06017

## TEXAS PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND

Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (the "Texas Plaintiffs"), creditors and parties in interest in the above captioned case, move to abstain from hearing the subject matter of this adversary proceeding and to remand this action to the 200th Judicial District Court of Travis County, Texas:

### I. INTRODUCTION

1.     This is a lawsuit under Texas state law against Alex Jones and his shell companies for fraudulently transferring assets to avoid paying imminent and crippling judgments.  The Texas Plaintiffs comprise Sandy Hook Families who originally sued the notorious conspiracy theorist and his media empire for spreading the absurd lie that the horrific shooting at Sandy Hook Elementary was a hoax and that these parents of slain first graders were mere crisis actors. Recently, a Texas jury awarded two Texas Plaintiffs over $49 million, with more Texas Plaintiffs preparing to try their cases in the coming months, and the Connecticut Plaintiffs were awarded over $1.4 billion.

2.     Presumably aware of what was to come, Jones and his flagship company Free Speech Systems, LLC ("FSS" or "Debtor") fraudulently siphoned assets away to become judgement-proof.  This, in turn, prompted the Texas Plaintiffs to sue under the Texas Uniform Fraudulent Transfer Act in Case No. D-1-GN-22-001610, styled *Heslin, et al. v. Jones, et al.* (the "TUFTA Case").  The same court and judge that presides over the Texas defamation cases also presides over the TUFTA Case. Apparently, to avoid defending against these claims in the same court that heard the Texas defamation cases, where Jones and his companies were sanctioned repeatedly to the point that default judgments were rendered against them, Jones had FSS petition

for bankruptcy protection in the bankruptcy court for the Southern District of Texas under the recently enacted Subchapter V framework. He then removed the TUFTA Case to this Court.

3.  When considering whether to retain jurisdiction, this Court need not accept or reward Jones's forum shopping. Instead, this Court should remand the TUFTA Case back to state court because the permissive abstention and equitable remand factors warrant this result. A similar fate occurred with Alex Jones's prior attempt to deprive the state court of jurisdiction following the bankruptcy filing of another of Jones's shell companies, InfoW, LLC, on the eve of Jones's first defamation trial. Ultimately, the InfoWars bankruptcy case was dismissed, and the TUFTA Case was remanded to state court.

4.  Now, once again, it appears that Jones seeks to use his control over FSS to forum shop. No new facts or law necessitate a different result from the prior remand. Indeed, remand is warranted because the TUFTA Case contains only state-law claims, brought before a state judge who knows firsthand the parties and the discovery abuses previously committed. The permissive abstention and equitable remand doctrine exists to protect against forum shopping and federal interference in state-court actions with no independent basis for federal jurisdiction other than the all-encompassing "related to" jurisdiction afforded to bankruptcy courts.

5.  Moreover, removal is *against* FSS's interest—it will protect Jones, his family, and other transferees rather than FSS itself. It is undeniable that a jury trial in the state court is the preferred vehicle for maximizing the recovery of fraudulent transfers from FSS's transferees—the very thing in which FSS, in its capacity as a debtor fiduciary, should be vested. But, Jones, as the owner and controller of FSS, prefers to impede rather than facilitate those recoveries. His conflict should not be rewarded.

6.     This Court should therefore abstain and equitably remand the TUFTA Case back to state court.

## II.     **BACKGROUND**

7.     In December 2012, the nation faced the horror of a mass shooting at Sandy Hook Elementary, which took the lives of 20 children.  In the years that followed, the families of the murdered children endured even more pain as Alex Jones and his media empire denied these children were even real.  Instead, Jones claimed the parents were paid actors in a massive hoax propagated by shadowy elite forces.  Jones published over 50 episodes and countless articles pushing this lie, all while coordinating and funding the families' harassment by dangerous fanatics.

8.     Beginning in 2018, the Texas Plaintiffs sued Jones and his companies, FSS and InfoWars, in Travis County state court for defamation and intentional infliction of emotional distress, among other claims (the "Defamation Cases").[1]  Fontaine sued Jones and his companies in Texas state court for spreading lies that Fontaine was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.[2]  The claims of the Heslin, Lewis, Pozner, and De La Rosa—parents of children slain at Sandy Hook Elementary—stem from Jones's conspiracy theories that the mass shooting was a hoax.[3]  Meanwhile, similar litigation was brought by Intervenors David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto,

---

[1]  Cause No. D-1-GN-18-001835, Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer, in the 261st Judicial District Court of Travis County, Texas; Cause No. D-1-GN-18-001842, Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, in the 345th Judicial District Court of Travis County, Texas; Cause No. D-1-GN-19-004651, Neil Heslin v. Alex E. Jones, Infowars, LLC, and Free Speech System, LLC, in the 261st Judicial District Court of Travis County, Texas; Cause No. D-1-GN-18-006623, Scarlett Lewis v. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, in the 98th Judicial District Court of Travis County, Texas; Cause No. D-1-GN-18-001605, Marcel Fontaine v. Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels, in the 459th Judicial District Court of Travis County, Texas. see also Ex. 1; Ex. 2.
[2]  Ex. 1, at ¶ 29.
[3]  Ex. 1, at ¶ 29.

William Sherlach, Robert Parker, William Aldenberg (the "<u>Connecticut Plaintiffs</u>") in Connecticut state court.[4]

9.     These Defamation Cases have been pending for over four years.  From the beginning, Jones and his companies tried to obstruct the prosecution of these cases, including: (1) repeatedly removing cases to federal court; (2) filing numerous appeals; (3) flouting discovery orders (especially as to financial documentation); (4) producing fabricated financial records; and (5) moving to recuse the presiding state court judge to avoid sanctions.  In the Texas Defamation Cases, 10 attorneys have come and gone as Jones consistently defied court orders and refused to litigate in good faith—all while incurring over $1.3 million in sanctions in nearly a dozen orders.[5] Jones was also sanctioned for frivolous pleadings by a Texas appellate court and was repeatedly sanctioned and held in contempt in the Connecticut Defamation Case.[6] These orders found Jones defied discovery orders, threatened plaintiffs' counsel, refused to cooperate with depositions, falsified discovery responses, tampered with evidence, submitted a fraudulent affidavit, made frivolous legal arguments, and introduced chaos and insolence into the proceedings.[7]  Their conduct has been so egregious that the courts in Texas and Connecticut entered default judgments against Defendants in the Defamation Cases on liability in September and November 2021.[8]

10.     Over the course of the Defamation Cases, the Texas Plaintiffs discovered that as defaults were entered in Texas, Jones's main company, Free Speech Systems, began siphoning assets and fabricating secured debts to make itself judgment-proof.[9]  Indeed, by that time, Jones

---

[4] *See* Ex. 2, at ¶ 29. These consolidated actions, now pending in the Connecticut Judicial District of Waterbury are: *Lafferty, Erica, et al. v. Jones, Alex Emric, et al.,* No. UWY-CV-18-0604636-S; *Sherlach, William v. Jones, Alex Emric, et al.,* No. UWY-cv-18-064637-S; and *Sherlach, et al. v. Jones, Alex Emric, et al.,* No. UWY-CV-18-064638-S.
[5] Ex. 3, at ¶ 3.
[6] Ex. 3, at ¶¶ 3, 5–6; Ex. 1, at ¶¶ 30–31; Ex. 2, at ¶ 30.
[7] Ex. 3, at ¶¶ 3, 5–6.
[8] Ex. 3, at ¶¶ 3, 5–6; Ex. 1, at ¶¶ 30–31; Ex. 2, at ¶ 30.
[9] Ex. 1, at ¶¶ 32–37; Ex. 2, at ¶¶ 31–36.

had drawn out millions from the company.[10]  And an alleged $54 million secured debt of Free Speech Systems to another company owned and operated by Jones and his parents, PQPR, emerged from the ether.[11]  What's more, FSS started transferring over $11,000 a day and its sales revenue to PQPR.[12]

11.  As a result, on April 6, 2022, the Texas Plaintiffs sued Jones and other entities he controls under the Texas Uniform Fraudulent Transfer Act in state court.[13]  (The Connecticut Plaintiffs later intervened in this TUFTA Case in June 2022.[14])  The TUFTA Case was assigned to the same judge—Judge Guerra Gamble—who also presides over all the Texas Defamation Cases, including the trial this past August that resulted in a judgment of over $49 million being assessed against Jones and FSS.[15]  Given her experience with the Texas Defamation Cases, she is perfectly and uniquely positioned to preside over the TUFTA Case, which involves not only many of the same parties, but also the same attorneys.

12.  Importantly, when the Texas Plaintiffs brought the TUFTA Case on April 6, none of Jones's businesses had petitioned for bankruptcy—yet.

13.  But that changed. The damages trial for the first Texas Defamation Case was set to begin April 25, 2022.  On the surface, Jones, FSS, and InfoWars acted like trial would happen.  A week before trial, however, Jones had his empty-shell company, InfoWars, petition for bankruptcy.[16]  Then, InfoWars removed the Texas Defamation Cases and the TUFTA Case to this Court.[17]

---

[10] Ex. 1, at ¶¶ 32–37; Ex. 2, at ¶¶ 31–36.
[11] Ex. 1, at ¶¶ 32–37; Ex. 2, at ¶¶ 31–36.
[12] Ex. 1, at ¶¶ 32–37; Ex. 2, at ¶¶ 31–36.
[13] Ex. 1.
[14] Ex. 2.
[15] Ex. 3, at ¶ 2; Ex. 6.
[16] Ex. 4, at ¶¶ 1–2.
[17] Id.

14.     These cases were swiftly remanded back to state court—after InfoWars was nonsuited and dismissed.[18] Soon after, facing the U.S. Trustee's motion to dismiss a bad-faith bankruptcy, Jones's InfoWars company dismissed its bankruptcy.  The first Texas Defamation Case then proceeded to trial on damages in July 2022.[19]   But mid-trial, just days before the jury returned a nearly $50 million verdict and weeks before the Connecticut trial began, Jones had his multimillion-dollar company, FSS, petition for bankruptcy under Chapter 11's subchapter V, which is designed for small businesses.[20]   After the automatic stays in those cases were lifted, the juries returned verdicts in Texas and Connecticut returned verdicts of over $49 million and $965 million respectively—and substantial amounts were allocated in punitive damages, as provided by Connecticut law.[21]

15.     Jones and FSS then removed the TUFTA Case from state court as allegedly related to FSS's bankruptcy.  The alleged jurisdictional basis for the removal is the Court's "related to" jurisdiction.[22]

16.     Nothing in the record suggests the state court failed to ably administer the TUFTA Case.  Just the opposite, Judge Guerra Gamble has the most expertise with these parties, these attorneys, and these state-law issues and is best placed to adjudicate this matter.[23]   Under the permissive-abstention doctrine, the Texas Plaintiffs respectfully ask that this Court abstain from hearing this case and remand it back to state court to adjudicate the TUFTA Case—the court best suited to resolve the issues presented by the TUFTA claims.

---

[18] Ex. 5.
[19] Ex. 3, at ¶ 4.
[20] Ex. 8, at ¶ 2; Ex. 3, at ¶ 4.
[21] Ex. 3, at ¶¶ 4–5, 7.
[22] Ex. 8, at ¶ 4.
[23] Ex. 3, at ¶ 2.

17.     To ensure that all relevant circumstances are considered on this remand motion, the Texas Plaintiffs and FSS have agreed to stay any further proceedings in this matter—including further briefing or any determination on this remand motion—until the outcome of FSS's bankruptcy case is known.[24] That agreement is being filed with the Court.

## III.     ARGUMENTS AND AUTHORITIES

18.     The TUFTA Case is neither a case under title 11, nor a civil proceeding arising under title 11.  Rather, it was removed on the basis that it allegedly is "related to" a case under title 11.[25]  As such, this Court should remand the TUFTA Case back to state court.  Section 1334 provides that a bankruptcy court may abstain from hearing suits commenced in state court before bankruptcy.[26].  A bankruptcy court may also remand a case "on any equitable ground."[27]  A court can abstain on a permissive basis from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for State law."[28]  And any doubts about a case's removability are resolved against the exercise of federal jurisdiction.[29]  Courts in the Fifth Circuit "typically use a factors-based analysis to determine if permissive abstention and equitable remand of a bankruptcy civil proceeding is appropriate."[30]  Bankruptcy courts have "broad power to abstain whenever appropriate in the interest of justice[.]"[31]  In deciding whether to permissively abstain, courts consider 14 factors.[32]  Under those factors, remand is warranted.

---

[24] Given statements by the parties, there may be some question as to who owns or controls the TUFTA Case. But that separate issue does not affect whether the bankruptcy court should abstain and allow the case to be tried—at the appropriate time—in the state court where it was filed.  The outcome of FSS's bankruptcy, including the proper disposition of the TUFTA Case, is still unknown and unpredictable.  No plan of reorganization has been proposed, much less confirmed.  And any confirmed plan will almost certainly prescribe such disposition—if FSS's bankruptcy is not converted to a chapter 7 liquidation or dismissed, which might also affect the TUFTA Case.

[25] *See* 28 U.S.C. § 1334(a), (b).

[26] 28 U.S.C. § 1334(c)(1).

[27] 28 U.S.C. § 1452(b).

[28] 28 U.S.C. § 1334(c)(1).

[29] *Acuna v. Brown & Root, Inc.* 200 F.3d 335, 339 (5th Cir. 2000).

[30] *Id.* at 731.

[31] *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (internal citations omitted).

[32] *Id.*

**Factor 1: The Lack of Effect on the Efficient Administration of the Estate Favors Remand.**

19.     The first factor examines the effect on the estate's efficient administration if the Court recommends remand or abstention.  Here, several Texas Sandy Hook Families have already secured a judgment against Jones and FSS for over $49 million, with several more trials expected in the coming months.  In other words, their claims—coupled with the Connecticut Plaintiffs'— make up more than 99.9% of all claims against the Debtor.[33]  Resolving the TUFTA Case swiftly before the state court that is most familiar with the issues, the parties, and their lawyers, will not impede the efficient administration of the estate; it will enhance it.

20.     Especially because this is not a normal case.  It involves unusual facts and an unusual cast of characters.  And Judge Guerra Gamble's years of experience with this cast and these matters uniquely equips her to umpire the TUFTA Case, particularly where it involves only state-law (and not federal or bankruptcy) claims.[34]  Adjudicating such claims effectively and efficiently does not require special bankruptcy knowledge; rather, it requires special knowledge of state law and the parties and counsel, including the history of discovery abuses in the Defamation Cases.  This factor, therefore, favors abstention because the state court knows the discovery issues, the parties, and the counsel involved from her years of presiding over the Texas Defamation Cases.[35]

**Factor 2: The Predominating State-Law Issues Favor Remand.**

21.     The second factor examines the extent to which state law issues predominate over bankruptcy issues.  Here, the TUFTA Case contains only claims under Texas law.  This factor,

---

[33] Ex. 3, at ¶¶ 2–5; 7; Ex. 7.

[34] Ex. 1, at ¶¶ 38–65; Ex. 2, at ¶¶ 37–64.

[35] *See Northern Natural Gas Co. v Sheerin*, No. SA-03-CA-304-RF, 2003 WL 22594457, at *7 (W.D. Tex. Oct. 20, 2003) (weighing factor in favor of abstention and remand where the state-court case contained no bankruptcy claims and state-law issues predominated).

therefore, favors abstention and remand too.[36]

**Factor 3: The Difficult or Unsettled Nature of the Applicable Law Favors Remand.**

22.    The third factor examines the difficult or unsettled nature of applicable law.  This case involves state-law claims—namely TUFTA and conspiracy.  Liability will likely turn not only the unique facts, but also the breadth of Texas law regarding: (i) TUFTA and conspiracy; (ii) veil-piercing, including alter ego; and (iii) spendthrift trusts.[37]  The need for any court adjudicating the TUFTA Case to consider these thorny Texas-law issues and related discovery disputes heavily favors remand, particularly to a state-court judge already familiar with the issues, parties, and counsel.[38]

**Factor 4: The Presence of a Related Proceeding Commenced in State Court or other Non-Bankruptcy Proceeding Favors Remand.**

23.    The fourth factor examines the presence of a related proceeding commenced in state court or other non-bankruptcy proceeding.  Here, the TUFTA Case was filed in state court months before FSS petitioned for bankruptcy protection.[39]  Where there is a pending proceeding in a state court at the time of the bankruptcy filing, including claims based on state fraudulent-transfer law, the court should exercise permissive abstention over such claims.[40]  This factor favors abstention.[41]

---

[36] *See In re Dune Energy*, 575 B.R. at 732; *see also In re IO AT Tech Ridge LP,* No. 17-11540-TMD, 2018 WL 2431640, at *4 (Bankr. W.D. Tex. May 3, 2018).

[37] Ex. 1, at ¶¶ 38–65; Ex. 2, at ¶¶ 37–64.

[38] Still, the matter need not be complicated to warrant abstention, so long as state law issues predominate.  *See Integrated Health Servs. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 620 (Bankr. D. Del. 2003) ("[E]ven if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding as they do in this case, this factor weighs in favor of having the state court decide it.").

[39] Ex. 1; Ex. 8.

[40] *See Taub v. Taub (In re Taub)*, 413 B.R. 81, 93 (Bankr. E.D.N.Y. 2009) (finding that the presence of a pending proceeding based on state law weighed in favor of abstention); *Graham v. Yoder Machinery (In re Weldon F. Stump & Co.)*, 373 B.R. 823, 828 (Bankr. N.D. Ohio 2007) (bankruptcy court abstaining from hearing fraudulent transfer avoidance actions when parallel action was pending in state court receivership action).

[41] Id.

**Factor 5: The Lack of Jurisdictional Basis, if any, other than § 1334 Favors Remand.**

24.     The fifth factor examines the jurisdictional basis, if any, other than § 1334.  Here, the only jurisdictional basis is 28 U.S.C. § 1334.  FSS's notice of removal alleges there is diversity jurisdiction, but that is irrelevant.  Indeed, Defendants include home-state defendants, which defeats any diversity-based removal under 28 U.S.C. 1332.[42]  This is precisely why Jones and FSS did not—and could not—remove the TUFTA Case before FSS sought bankruptcy protection.  A bankruptcy should not be deployed as a route for otherwise impermissible forum shopping.  Therefore, this factor favors permissive abstention or remand.[43]

**Factor 6: The Relatedness of this Lawsuit to the Main Bankruptcy Case is Neutral.**

25.     Under the sixth factor, "the degree of relatedness or remoteness of a proceeding to the main bankruptcy case can neither weigh in favor of nor against abstention and remand when the proceeding will not be heard before the bankruptcy judge who heard the main bankruptcy case."[44]  Here, FSS seeks to have this case heard in the Bankruptcy Court for the Western District of Texas while the main bankruptcy case is being heard in the Bankruptcy Court of the Southern District of Texas.  In fact, this Court has already invited FSS to explain why the TUFTA Case was removed or transferred to this Court.  If this Court does not equitably remand this action, it may be heard by a different judge than the judge presiding over the main bankruptcy case.  As such, this factor is neutral.

---

[42] *See also In re Integrated Health Servs., Inc.*, 291 B.R. at 621 (Bankr. D. Del. 2003) (abstention warranted when "there is no independent basis for federal jurisdiction" and where "there is no diversity" since the plaintiff and at least one defendant were citizens of the same state).
[43] *In re IO AT Tech Ridge LP*, 2018 WL 2431640 at *4.
[44] *Special Value Continuation Partners, L.P. v. Jones,* Adv. No. 11-3304, 2011 WL 5593058, at *10 (Bankr. S.D. Tex. Nov. 10, 2011).

**Factor 7: The Substance rather than the Form of an Asserted Core Proceeding Favors Remand.**

26.     The seventh factor examines the substance of an asserted core proceeding.  No bankruptcy claims are asserted and the TUFTA Case is not a core proceeding.  Therefore, this factor "strongly supports abstention and remand[.]"[45]

**Factor 8: The Ability to Sever State Claims from Core Bankruptcy Matters Favors Remand.**

27.     The eighth factor examines the feasibility of severing state-law claims from core bankruptcy matters to let judgments be entered in state court with enforcement left to the bankruptcy court.  Again, the TUFTA Case involves no core bankruptcy matters and contains only state-law claims.  As such, there is nothing to sever and this factor favors permissive abstention and remand or, at a minimum, is neutral[46]

**Factor 9: The Burden of the Bankruptcy Court's Docket Favors Remand.**

28.     The ninth factor examines the burden on the bankruptcy court's docket.  Here, the Texas Plaintiffs are entitled to a jury trial and do not consent to a jury trial in bankruptcy court.[47] As such, "it would take at least two different federal judges in two federal courts to fully adjudicate" their claims—while "the State Court (using one state court district judge) has the jurisdiction, authority, and docket availability to handle" all matters regarding the Texas Plaintiffs' claims.[48]  This is especially true here—where the TUFTA state-court judge has dealt with the same

---

[45] *In re Dune Energy*, 575 B.R. at 727 ("state law causes of action based on pre-bankruptcy events that do not invoke a substantive right created by federal bankruptcy law" or "causes of action [that] exist under state law and stand independent of the bankruptcy case," are not "core" proceedings).; *Special Value Continuation Partners, L.P.*, 2011 WL 5593058 at *9.

[46] *See In re SBMC Healthcare, LLC*, 519 B.R. 172, 191-92 (Bankr. S.D. Tex. 2014) (holding this factor favors abstention when claims arise under state law and lack "core" bankruptcy matters).

[47] Unlike other non-core matters, which may be heard in the first instance by a bankruptcy court subject to *de novo* review by a district court, 28 U.S.C. § 157(c)(1), personal injury tort and wrongful death claims are explicitly required to be ordered tried in a district court, whether in the district where the bankruptcy case is pending or in the district in which the claim arose.  28 U.S.C. § 157(b)(5).

[48] In re Dune Energy, Inc., 575 B.R. at 733.

parties and counsel for years in the Texas Defamation Cases. This factor, therefore, favors permissive abstention and remand.

**Factor 10: The Likelihood that the Removal Involves Forum Shopping Favors Remand.**

29. The tenth factor examines the likelihood that the removal petition/commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. Forum shopping "must rise to a level demonstrating an attempt to abuse or manipulate the judicial process."[49] It's no secret why Jones and his companies are desperate to get out of state court. Their litigation tactics and discovery abuses failed before Judge Guerra Gamble. Indeed, Judge Guerra Gamble has not only rendered default judgments against them on these grounds but also sanctioned them for over $1 million. (And just last week, on November 22nd, Judge Guerra Gamble entered a judgment for the full $49 million jury verdict—determining that Texas's exemplary-damages cap did not apply based on the case's extraordinary facts.) For precisely that reason, Jones previously tried this removal tactic when he forced InfoWars into bankruptcy on the eve of trial in the first Texas Defamation Case. Now it appears he is trying to take advantage of the removal allowed by bankruptcy courts once again by removing the TUFTA Case for the second time in six months.[50] Gamesmanship like this should neither by rewarded, nor tolerated. This factor favors permissive abstention and remand.

**Factor 11: The Existence of a Right to a Jury Trial Favors Remand.**

30. The eleventh factor examines the existence of a right to a jury trial. Again, the Texas Plaintiffs are entitled to a jury trial and do not consent to a jury trial before the bankruptcy

---

[49] *In re IO AT Tech Ridge LP*, 2018 WL 2431640 at *5.
[50] *See N.J. Dep't of Env'l Prot. v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, 560 B.R. 111, 128 (Bankr. D. Del. 2016) (finding abstention was warranted when lawsuit had been pending in state court and finding that forum shopping concerns were raised when party seeking bankruptcy jurisdiction had not enjoyed success in state court).

court.[51]  This Court "does not have authority to enter a final judgment in the Suit, since it is a non-core proceeding[.]"[52]  This factor, therefore, "weigh[s] heavily in favor of permissive abstention and remand."[53]

**Factor 12: The Presence in the Proceeding of Non-Debtor Parties Favors Remand.**

31.     The twelfth factor examines the presence of non-debtor parties.  With InfoWars dismissed, all but one of the remaining 29 parties are non-debtors. [54]  This factor favors permissive abstention and remand.[55]

**Factor 13: Comity Here Favors Remand.**

32.     The thirteenth factor examines comity.  The TUFTA Case involves only state-law issues, and the state-court judge already knows the issues, the parties, and their attorneys.  This factor also favors remand.[56]

**Factor 14: The Possibility of Prejudice to other Parties in the Action Favors Remand.**

33.     The fourteenth factor examines the possibility of prejudice to the other parties in the action.  Here, keeping the TUFTA Case in federal court prejudices the Texas Plaintiffs.  The state-court judge assigned to the TUFTA Case already knows the cast of characters and the discovery abuses that occurred in the Texas Defamation Cases.  The state-court judge will not have to play catch up to get up to speed on the last four years of litigation between the same parties.

---

[51] *See Bright v. S. Tech. Coll. (In re S. Tech. Coll., Inc.)*, 144 B.R. 421, 422 (Bankr. E.D. Ark. 1992) (abstention warranted when "plaintiffs have made demand for jury, again invoking complex procedures inasmuch as this Court cannot conduct jury trials" and noting that "[a] right to jury trial is another factor which militates in favor of remand to the state court or abstention in deference to the state court.").

[52] In re Dune Energy, Inc., 575 B.R. at 733.

[53] *Id.*

[54] Ex. 1; Ex. 2.

[55] *See also In re IO AT Tech Ridge LP*, 2018 WL 2341640 at * 6 (holding that this factor weighed in favor of abstention or remand where all but one party were non-debtor parties).

[56] *In re Dune Energy, Inc.*, 575 B.R. at 733 ("Suit involves state law issues and deference should be given to the State Court to decide state law issues[.]; *see also In re SBMC Healthcare, LLC*, 519 B.R. at 192 (factor favored abstention where "Plaintiffs had already instituted their suit in Texas state court when Defendants removed the lawsuit[.]").

Moreover, this Court cannot hold a jury trial on the TUFTA Case, so the Texas Plaintiffs would be at the mercy of yet another court in trying to get this case to trial. On the other hand, there would be no "prejudice to any party by remanding the State Court Suit to state court" and keeping the case in federal court "would be wasteful and prejudicial to the parties."[57] This factor favors permissive abstention and remand.

## IV.   CONCLUSION

"Under Western District precedent, a court should not just count how many factors favor each side and declare as winner the one with the most factors."[58] "[A]ny equitable ground may support a court's decision to remand."[59] As all equitable factors either favor remand or are neutral, equity demands this Court abstain from hearing the TUFTA Case and remand it to the State Court. For these reasons, the Texas Plaintiffs respectfully ask that the Court abstain and remand the TUFTA Case back to State Court in the 200th Judicial District of Travis County Texas.

Dated: November 28, 2022          Respectfully submitted,

MCDOWELL HETHERINGTON LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

---

[57] *In re Rosales,* No. 12-30590-RBK, 2012 WL 4343701 at *7 (Bankr. W.D. Tex. Sept. 21, 2012).
[58] *In re IO AT Tech Ridge LP*, 2018 WL 2431640 at *6.
[59] *Id.*

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Bankruptcy Counsel for the Texas Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been served upon all parties eligible to receive electronic notice of filings through the Court's CM/ECF system on November 27, 2022, which may include the following:

Raymond W. Battaglia
rbattaglialaw@outlook.com
LAW OFFICE OF RAYMOND W. BATTAGLIA
66 Granburg Circle
San Antonio, Texas 78218

F. Andino Reynal
areynal@frlaw.com
FERTITTA & REYNAL LLP
917 Franklin St., Ste. 600
Houston, Texas 77002

Shelby Jordan
sjordan@jhwclaw.com
JORDAN & ORTIZ, P.C.
500 N. Shoreline Blvd., Ste. 900
Corpus Christi, Texas 78401

Stephen Lemmon
lemmon@slollp.com
STREUSAND, LANDON, OZBURN & LEMMON, LLP
1801 S. MoPac Expwy., Suite 320
Austin, Texas 78746

Stephen A. Roberts
sroberts@srobertslawfirm.com
STEPHEN A. ROBERTS, PC
1400 Marshall Lane
Austin, Texas 78703

Ryan E. Chapple
rchapple@cstrial.com
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

*/s/ Jarrod B. Martin*
Jarrod B. Martin

---

# Exhibit 1

4/6/2022 1:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-001610
Ruben Tamez

D-1-GN-22-001610

CAUSE NO. _____

| | | |
|---|---|---|
| **NEIL HESLIN, SCARLETT LEWIS,** | § | **IN THE DISTRICT COURT** |
| **LEONARD POZNER, VERONIQUE** | § | |
| **DE LA ROSA, MARCEL FONTAINE** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, INFOWARS, LLC,** | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | |
| **PQPR HOLDINGS LIMITED LLC,** | § | |
| **JLJR HOLDINGS, LLC, PLJR** | § | |
| **HOLDINGS, LLC, CAROL JONES,** | § | |
| **DAVID JONES, PQPR HOLDINGS,** | § | |
| **LLC, JLJR HOLDINGS LIMITED,** | § | |
| **LLC, AEJ HOLDINGS, LLC, AEJ** | § | |
| **TRUST 2018** | § | 200TH, DISTRICT COURT |
| | § | |
| **Defendants.** | § | _____ **DISTRICT COURT** |

## PLAINTIFFS' ORIGINAL PETITION

### Introduction

1.      After Alex Jones was sued for claiming the massacre at Sandy Hook Elementary was a hoax, the infamous conspiracy theorist conspired to divert his assets to shell companies owned by insiders like his parents, his children, and himself. Since being sued, Jones transferred millions of dollars from his fortune to these insiders—whom he apparently thought were beyond reach. But the Texas Uniform Fraudulent Transfer Act prohibits defendants from playing shell games to shield assets from their creditors. And it allows creditors like the Sandy Hook Families to void fraudulent transfers that defendants like Alex Jones make to their insiders. The Sandy Hook Families and Fontaine therefore assert TUFTA claims against Jones and his insiders to foil this scheme.

## Parties

**The Sandy Hook Families**

     2.     Plaintiff Neil Heslin is an individual who resides in Connecticut.

     3.     Plaintiff Scarlett Lewis is an individual who resides in Connecticut.

     4.     Plaintiff Leonard Pozner is an individual who resides in Florida.

     5.     Plaintiff Veronique De La Rosa is an individual who resides in Florida.

**Fontaine**

     6.     Plaintiff Marcel Fontaine is an individual who resides in Massachusetts.

**The Jones Debtors**

     7.     Defendant Alex E. Jones is a resident of Austin, Texas. He hosts radio and web-based news programing, including "The Alex Jones Show," and he owns Free Speech Systems, LLC, which operates the website infowars.com. Jones can be served at his place of business, InfoWars, 3019 Alvin Devane Blvd., Suite 300-350, Austin, TX 78741.

     8.     Defendant InfoWars, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. It may be served at the address of its registered agent, Eric Taube, at 100 Congress Ave., 18th Floor, Austin, TX 78701.

     9.     Defendant Free Speech Systems, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. It may be served at the address of its registered agent, Eric Taube, at 100 Congress Ave., 18th Floor, Austin, TX 78701.

     10.     At all times relevant to this petition, these Jones Debtors operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

**The Jones Transferees**

11.     Defendant PQPR Holdings Limited LLC is a Nevada limited-liability company. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

12.     Defendant JLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

13.     Defendant PLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

14.     Defendant Carol Jones is a resident of Austin, Texas. She is Alex Jones's mother and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. She can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever she can be found.

15.     Defendant David Jones is a resident of Austin, Texas. He is Alex Jones's father and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. He can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever he can be found.

16.     Defendant PQPR Holdings, LLC is an entity that has been previously identified by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

17.     Defendant JLJR Holdings Limited, LLC is an entity listed as a member of PQPR Holdings Limited, LLC and PLJR Holdings, LLC. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

18.     Defendant AEJ Holdings, LLC is an entity that has been identified previously by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

19.     Defendant AEJ Trust 2018 is an entity that has been identified previously by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

20.     At all times relevant to this petition, the Jones Transferees and Defendant Alex Jones operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

## Discovery-Control Plan

21.     Discovery should be conducted under Level 3 case of the Texas Rules of Civil Procedure.[1] Plaintiffs seek monetary relief over $1,000,000.[2]

## Jurisdiction and Venue

22.     The amount in controversy exceeds the Court's minimum jurisdictional requirements.

---

[1] *See* Tex. R. Civ. P. 190.

[2] *See* Tex. R. Civ. P. 47. Plaintiffs may also seek injunctive relief, in which case they may request expedited discovery.  *See* Tex. R. Civ. P. 680.

23.     Venue is proper in Travis County because that's where certain Defendants resided when the cause of action accrued and because all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County.[3]

## Background

24.     Alex Jones, through his media companies Free Speech Systems and InfoWars, became a national figure by peddling bizarre conspiracy theories. Followers tune in to hear him and his guests ramble about unsubstantiated claims—like how the September 11th attacks were an inside job by the U.S government. They can also hear him tout the various products available to buy on his InfoWars website. And they can then navigate to that website, where they have a host of products available for purchase.

25.     They can buy, for example, bumper stickers echoing the types of conspiracy theories they hear on Jones's programming:



[4]

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 15.002.

[4] InfoWars Store, at "Stickers and Decals", https://www.infowarsstore.com/gear/stickers-and-decals (last visited April 4, 2022).

26.     They can even buy various "preparedness" kits ranging from seeds to storable food to survival gear to nuclear and biological supplies:



27.     The sale of these types of products on the InfoWars website and elsewhere enabled the Jones Debtors to earn a fortune.

28.     But after the Jones Debtors aimed their conspiracy theories at Sandy Hook Elementary—claiming the tragic shooting there was staged—that all changed.

---

[5] InfoWars Store, at "Preparedness", https://www.infowarsstore.com/preparedness (last visited April 4, 2022).

**The Sandy Hook Families and Fontaine sue the Jones Debtors for defamation.**

29.     In April 2018, the Sandy Hook Families and Fontaine sued the Jones Debtors for defamation, among other claims, based on various lies and conspiracy theories Alex Jones espoused through his media outlet (the Defamation Cases).[6] The claims of the Sandy Hook Families—parents of children slain at Sandy Hook—stem from conspiracy theories the Jones Debtors disseminated that the mass shooting was a hoax.[7] Similarly, Fontaine's claims arose from falsehoods the Jones Debtors spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.[8]

30.     Rather than accept responsibility for propagating these lies, however, the Jones Debtors continued to deflect the truth. The Jones Debtors first tried to dismiss the Defamation Cases. But the trial courts denied those attempts in part because the Jones Debtors refused to cooperate in the cases' truth-finding phase of discovery. Instead of accepting blame then, the Jones Debtors appealed the trial courts' denials of their dismissal motions. Each time, the appellate court declined the Jones Debtors' requests to dismiss the cases. The appellate court

---

[6] Cause No.: D-1-GN-18-001835; *Neil Heslin v Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001842; *Leonard Pozner and Veronique De La Rosa v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 345th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-19-004651; *Neil Heslin v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-006623; *Scarlett Lewis v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 98th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001605; *Marcel Fontaine v Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 459th Judicial District Court of Travis County, Texas.

[7] *See e.g., Jones v. Heslin,* No. 03-20-00008-CV, 2020 WL 4742834, at *1 (Tex. App.—Austin Aug. 14, 2020, pet. denied); *Jones v. Heslin,* No. 03-19-00811-CV, 2020 WL 1452025, at *1 (Tex. App.—Austin March 25, 2020, pet. denied); *Jones v. Pozner*, No. 03-18-00603-CV, 2019 WL 5700903, at *9 (Tex. App.—Austin Nov. 5, 2019, pet. denied); *Jones v. Lewis*, No. 03-19-00423-CV, 2019 WL 5090500, at *4 (Tex. App.—Austin October 11, 2019, pet. denied).

[8] *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at *1 (Tex. App.—Austin Oct. 24, 2019, pet. denied).

even sanctioned the Jones Debtors for raising a frivolous appeal that misrepresented the underlying facts and the governing law.[9]

31. Even after the appellate court allowed the Defamation Cases to proceed, the Jones Debtors continued to obstruct discovery. Their repeated discovery abuses even culminated in the trial court granting default judgments for the Sandy Hook Families and against the Jones Debtors on liability in September 2021. The first trial against the Jones Debtors on damages commences at the end of April 2022. The next will follow soon after. In other words, judgments against the Jones Debtors are imminent.

**During the Defamation Cases, the Jones Debtors doomsday prepped for these eventual judgments by diverting assets.**

32. After the Sandy Hook Families and Fontaine filed their Defamation Cases, the Jones Debtors started diverting their assets. From 2018 to 2021, for example, Alex Jones personally drew about $18 million from his InfoWars company, Free Speech Systems. These draws were in addition to his yearly salary, which exceeded $600,000, and taken while Free Speech Systems operated at a net loss in the millions each of those years.

33. Jones apparently drew these $18 million while his company, Free Speech Systems, was insolvent. Just three months after the last appellate-court decision allowing the Defamation Cases to proceed, a company named PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt Free Speech Systems owes to PQPR. The supposed debt began accruing years earlier as part of an arrangement where Free Speech Systems sells PQPR's products on the InfoWars website. Under this alleged arrangement, PQPR was to be reimbursed for the costs of the products and receive 70% of the sales revenue while

---

[9] *Heslin*, 2020 WL 1452025, at *6.

Free Speech Systems retained the other 30%. In practice, however, Free Speech Systems supposedly kept 100% of the revenue for about seven years and didn't pay for the goods PQPR provided—to the point where a $54 million debt had accumulated. All the while, PQPR not only supplied Free Speech Systems with more products to sell but also paid Free Speech Systems millions of dollars a year to advertise on the InfoWars website. PQPR still supplies the Jones Debtors with products to sell and pays for advertising on the website.

34. So why would an independent business like PQPR continue to engage in such questionable transactions?

35. Because PQPR is not actually an independent business. It's an insider of the Jones Debtors. It is owned and operated directly or indirectly by Jones, his parents, and his children through an alphabet soup of shell entities like JLJR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; PQPR Holdings, LLC; AEJ Holdings, LLC; and AEJ Trust 2018. And the income PQPR receives—including from sources like the Jones Debtors—goes to Alex Jones and these Jones Transferees.

36. And after the Defamation Cases began, the Jones Debtors started transferring large sums of money to the Jones Transferees. These sums include money the Jones Debtors started regularly transferring from Free Speech Systems to PQPR *the same month that the default judgments were rendered*. In fact, the month the default judgments were rendered, Free Speech Systems started transferring to PQPR between $11,000 per day and $11,000 per week plus 60–80% of Free Speech Systems' sales revenue—supposedly just to pay the interest on the alleged $54 million debt. Free Speech Systems claims these payments are part of a "financial disentanglement between the two companies[.]" In reality, they're transfers designed to siphon off the Jones Debtors' assets to make them judgment-proof.

37.     This fact is only confirmed by the jaw-dropping amount in transfers the Jones Debtors made during the Defamation Cases. In 2021 alone, the Jones Debtors transferred from Free Speech Systems tens of millions more than it cost to operate that year. These transfers started just four months after the last appellate-court decision was issued that allowed the Defamation Cases to proceed.

## Causes of Action

38.     The Sandy Hook Families and Fontaine assert fraudulent-transfer claims under the Texas Uniform Fraudulent Transfer Act to void transfers between the Jones Debtors and the Jones Transferees. Texas enacted TUFTA to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach.[10] Through TUFTA's statutory scheme, creditors may seek recourse for fraudulent transfers of assets or property.[11] The Sandy Hook Families and Fontaine are creditors entitled to recourse under TUFTA because the Jones Debtors engaged in fraudulent transfers and conspired to commit fraudulent transfers.[12]

**Count 1—Fraudulent Transfer with actual intent to hinder, delay, or defraud under § 24.0005(a)(1)**

39.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

---

[10] *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).

[11] *Sargeant v. Al Saleh*, 512 S.W.3d 399, 411–12 (Tex. App.—Corpus Chrisi-Edinburg 2016, no pet.) (citing cases).

[12] *See* Tex. Bus. & Com. Code § 24.002 (defining "creditor" as a person who has a "claim" and "claim" as a right to payment including whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed); *see also Bank of Am., N.A. v. Fulcrum Enterprises, LLC*, 20 F. Supp. 3d 594, 601 (S.D. Tex. 2014) (explaining that a person my bring a TUFTA action as a creditor of the transferor by virtue of a legal action, pending and unliquidated at the time of transfer).

40.     The Jones Debtors are liable for engaging in fraudulent transfers as to present and future creditors under § 24.0005(a)(1).[13] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor.[14] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[15]

41.     The Jones Debtors engaged in fraudulent transfers under this standard. During the Defamation Cases—while the Sandy Hook Families and Fontaine were creditors—the Jones Debtors transferred millions of dollars from Free Speech Systems for reasons unrelated to Free Speech Systems' business operations. In 2021 alone, they transferred from Free Speech Systems tens of millions more than it cost to operate that year. These transfers started just four months after the last appellate-court decision was issued that allowed the Defamation Cases to proceed.

42.     Transfers by the Jones Debtors while the Defamation Cases were pending also include payments to insiders, like Jones himself. From 2018 to 2021, for example, Jones apparently drew $18 million from Free Speech Systems, even though it was insolvent and operating at a net loss each of those years. These draws were in addition to (and about 30 times greater than) Jones's yearly salary.

43.     And since the Defamation Cases began, the Jones Debtors also transferred large sums to other insiders, like the Jones Transferees. These sums include money the Jones Debtors

---

[13] Tex. Bus. & Com. Code § 24.005(a)(1) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;").

[14] *Id.*

[15] *Id.*

started regularly transferring from Free Speech Systems to insider PQPR the same month that default judgments in the Defamation Cases were rendered. Specifically, PQPR started receiving as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. These payments are allegedly to pay just the interest on the questionable $54 million obligation to PQPR the Jones Debtors decided that Free Speech incurred just three months after the appellate court allowed the Defamation Cases to proceed. All the while the Jones Debtors retained possession and control of these money transfers and obligations, as the money PQPR receives from Free Speech Systems goes directly and indirectly to insiders like Jones, his parents, and his children through the shell entities included as Jones Transferees.

44. These transfers and obligations that the Jones Debtors made and incurred were done with the actual intent to hinder, delay, or defraud their creditors—including the Sandy Hook Families and Fontaine. That truth becomes especially glaring considering the badges of fraud surrounding these transfers and obligations.[16] Those badges include, for example, that the transfers and obligations were made to insiders who retained possession and control over the property; the transfers and obligations were concealed and made while the Defamation Cases were pending and while the Jones Debtors were insolvent; and that past and future transfers to PQPR will eliminate substantially all of the Jones Debtors' assets—as these essential assets paid

---

[16] Tex. Bus. & Com. Code § 24.005(b) ("(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.").

to insider and supposed secured creditor PQPR will be subsequently transferred to insiders like Jones, his parents, and his children through the Jones Transferees.

45.    The Jones Debtors are thus liable under § 24.0005(a)(1) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies the Sandy Hook Families and Fontaine seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[17]

## Count 2—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0005(a)(2)

46.    The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

47.    The Jones Debtors are liable for engaging in fraudulent transfers as to present and future creditors under § 24.0005(a)(2).[18] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and either (1)  the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to

---

[17] Tex. Bus. & Com. Code § 24.008.

[18] Tex. Bus. & Com. Code § 24.005(a)(2) "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.").

the business or transaction; or (2) the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[19] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[20]

48.     Under these standards the Jones Debtors committed fraudulent transfers as to the Sandy Hook Families and Fontaine. While the Defamation Cases were pending—that is, while the Sandy Hook Families and Fontaine were creditors—the Jones Debtors transferred millions of dollars from Free Speech Systems without receiving reasonably equivalent value in exchange, and while the Jones Debtors' assets were unreasonably small. Moreover, the Jones Debtors incurred millions of dollars in obligations they intended or reasonably should have believed they would be unable to pay as they became due.

49.     For instance, in 2021 the Jones Debtors transferred from Free Speech Systems tens of millions more than it cost to operate the company. These transfers were unrelated to operating the business and thus weren't in exchange for reasonably equivalent value. And these transfers far exceeded Free Speech Systems' assets—and any of the Jones Debtors' for that matter—which were unreasonably small compared to the millions transferred away.

50.     And from 2018 to 2021, the Jones Debtors also transferred from Free Speech Systems to Jones about $18 million on top of the already substantial salary he received. Of course these $18 million in draws weren't for reasonably equivalent value, especially given that Free Speech Systems was operating at a loss at that time and allegedly had other substantial debts to insider PQPR it hadn't been paying for years. And these $18 million in transfers

---

[19] *Id.*

[20] *Id.*

virtually eliminated Free Speech Systems' remaining assets, which were already unreasonably small compared to the $18 million that had been transferred.

51. And around the time that default judgments were rendered against the Jones Debtors in the Defamation Cases, the Jones Debtors incurred an obligation to insider PQPR to pay only the interest on the supposed $54 million debt to PQPR that Free Speech Systems hadn't been paying as it became due. Under this obligation to pay only the interest, Free Speech Systems agreed to pay as much as $11,000 per day plus 60–80% of its sales revenue. Incurring such a hefty obligation to cover only the interest on an alleged debt to an insider is not for reasonably equivalent value. And the Jones Debtors intended to incur or believed or reasonably should have believed that Free Speech Systems was incurring, debts beyond its ability to pay as they became due. After all, given that 100% of Free Speech Systems' sales revenue was already too little to cover its operating expenditures, counting on only 20–40% of sales revenue to cover operating expenditures would be quixotic. The Jones Debtors knew or should have known their new obligation to insider PQPR—which is directly and indirectly run by and benefits Jones, his parents, and his children through the Jones Transferees—is beyond their ability to pay.

52. This of course rests against the backdrop of the dubious $54 million obligation Free Speech Systems now claims it owes PQPR. Free Speech Systems apparently did not recognize any obligation to PQPR before the Defamation Cases. Only after the appellate court allowed the cases to proceed, did any evidence of an obligation by Free Speech Systems to PQPR surface. That Free Speech Systems needlessly agreed to take on a $54 million obligation to an insider is not an obligation in exchange for reasonably equivalent value. And it's an obligation the Jones Debtors apparently intended to incur or believed or reasonably should have believed they would incur and would be beyond their ability to pay as they became due.

53.     The Jones Debtors are thus liable under § 24.0005(a)(2) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[21]

## Count 3—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0006(a)

54.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

55.     The Jones Debtors are liable for engaging in fraudulent transfers as to present creditors under § 24.0006(a).[22] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[23]

56.     The Jones Debtors also committed fraudulent transfers under this standard. While the Sandy Hook Families and Fontaine were creditors and while the Jones Debtors were insolvent, the Jones Debtors transferred millions of dollars without receiving reasonably

---

[21] Tex. Bus. & Com. Code § 24.008.

[22] Tex. Bus. & Com. Code § 24.006(a) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.").

[23] *Id.*

equivalent value. These transfers include the tens of millions transferred from Free Speech Systems in 2021 that were unrelated to its operation. They also include $18 million that Jones drew from his business, Free Speech Systems. And they include the Jones Debtors' payments on just the interest on an alleged $54 million debt Free Speech Systems owes insider PQPR—payments that include as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. As explained in prior sections, none of these transfers and obligations were in exchange for reasonably equivalent value. And all were apparently made and incurred while the Jones Debtors were insolvent—or they became insolvent as a result of these transfers and obligations.

57.    The Jones Debtors are thus liable under § 24.0006(a) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[24]

## Count 4—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0006(b)

58.    The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

59.    The Jones Debtors are liable for engaging in fraudulent transfers as to present creditors under § 24.0006(b).[25] A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent

---

[24] Tex. Bus. & Com. Code § 24.008.

[25] Tex. Bus. & Com. Code § 24.006(b) ("(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.").

debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.[26]

60. The Jones Debtors engaged in fraudulent transfers under this standard. After the Sandy Hook Families' and Fontaine's claims against the Jones Debtors arose, the Jones Debtors started repaying an alleged debt to insider PQPR, which is owned directly and indirectly by Jones, his parents, and his children through various entities—the Jones Transferees. Moreover, income that PQPR receives from Free Speech Systems, for example, is directly and indirectly paid to Jones, his parents, and his children though the Jones Transferees. The Jones Debtors made these transfers to pay off this antecedent debt to insider PQPR directly (and Jones and the Jones Transferees indirectly) while they were insolvent. And the Jones Transferees, including PQPR, had reasonable cause to believe that the Jones Debtors were insolvent at the time. After all, the Jones Debtors allegedly failed to the pay the supposed debt to PQPR for years to the point where the debt reached $54 million and exceeded the Jones Debtors' assets.

61. And to the extent that the $18 million Jones drew from Free Speech Systems between 2018 and 2021 were payments for antecedent debts, such payments are also fraudulent transfers under this section. These transfers were made after the Sandy Hook Families' and Fontaine's claims against the Jones Debtors arose. As Free Speech Systems' sole owner, Jones was its insider. And as its sole owner, Jones had reasonable cause to believe that Free Speech Systems was insolvent—and in fact was insolvent—when these transfers to him were made.

62. The Jones Debtors are thus liable under § 24.0006(b) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones

---

[26] *Id.*

18

Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[27]

## Count 5—Conspiracy to commit fraudulent transfers

63. The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

64. The Jones Debtors and the Jones Transferees are liable for conspiracy to commit fraudulent transfers.[28] The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt unlawful acts; and (5) proximately resulting in injury.[29]

65. Here, the Jones Debtors and the Jones Transferees conspired to commit fraudulent transfers. As the prior paragraphs establish, the Jones Debtors and the Jones Transferees conspired to siphon the Jones Debtors' assets away to avoid paying the Sandy Hook Families and Fontaine in the Defamation Cases. The Jones Debtors and the Jones Transferees then proceeded with the course of action of transferring millions of dollars in assets away from the Jones Debtors and having the Jones Debtors incur millions of dollars in obligations to its insider Jones Transferees, who weren't sued in the Defamation Cases. These overt acts are unlawful fraudulent transfers under TUFTA. And they proximately resulted in injury to the Sandy Hook Families and Fontaine. Diverting assets away from the Jones Debtors to the Jones Transferees impairs the Sandy Hook Families' and Fontaine's ability to collect on their judgments.

---

[27] Tex. Bus. & Com. Code § 24.008.

[28] *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 743 (Bankr. S.D. Tex. 2020) (citing *Ramirez v. Rodriguez (In re Ramirez),* 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) and *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008)).

[29] *Id.* at 743–44.

## Conditions Precedent

66.     All conditions precedent to the Sandy Hook Families' and Fontaine's claims for relief have been performed or have occurred or have been waived.

## Attorney's Fees and Interest

67.     The Sandy Hook Families and Fontaine seek costs and attorney's fees under § 24.013 of the Texas Uniform Fraudulent Transfer Act.[30]

68.     The Sandy Hook Families and Fontaine further seek pre- and post-judgment interest on the amount of any judgment as allowed by law.

## Request for Disclosure

69.     Defendants are requested to disclose, within 50 days of the service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

## Trial by Jury

70.     The Sandy Hook Families and Fontaine respectfully request a trial by jury.

## Notice of Intent

71.     Under Rule 193.7, Plaintiffs intend to use any documents produced in response to written discovery requests at trial and in any pretrial matters in the litigation.[31]

## Prayer

For these reasons, Plaintiffs respectfully request that Defendants be cited to appear and answer and that judgment be awarded to Plaintiffs for the following:

1) avoidance of transfers or obligations to the extent necessary to satisfy Plaintiffs' claims;

---

[30] Tex. Bus. & Com. Code § 24.013.

[31] Tex. R. Civ. P. 193.7.

2)  an attachment or any other provisional remedy against the assets transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings;

3)  an injunction—including temporary and permanent injunctive relief—against further disposition by the debtors or transferees, or both, of the assets transferred or of other property;

4)  an appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

5)  to levy execution on assets transferred or their proceeds;

6)  actual damages, including direct, indirect, special, incidental, and consequential damages;

7)  exemplary damages;

8)  costs and reasonably attorney's fees as are equitable and just;

9)  pre- and post-judgment interest;

10) any other relief the circumstances may require.

Dated: April 6, 2022

Respectfully submitted

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
    Avi Moshenberg
    Texas Bar No. 24083532
    Nick Lawson
    State Bar No. 24083367
    Matthew Caldwell
    State Bar No. 24107722
    1001 Fannin Street, Suite 2700
    Houston, TX 77002
    Phone: (713) 337-5580
    Fax: (713) 337-8850
    Email: avi.moshenberg@mhllp.com
    Email: nick.lawson@mhllp.com
    Email: matthew.caldwell@mhllp.com

**KASTER LYNCH FARRAR & BALL, LLP**


By: */s/ Mark D. Bankston*
    Mark D. Bankston
    State Bar No. 24071066
    William R. Ogden
    State Bar No. 24073531
    1117 Herkimer
    Houston, Texas 77008
    (713) 221-8300 Telephone
    (713) 221-8301 Fax
    Email: mark@fbtrial.com
    Email: bill@fbtrial.com


**THE AKERS FIRM PLLC**


By: */s/ Cordt Akers*
    Cordt Akers
    State Bar No. 24080122
    3401 Allen Parkway, Suite 101
    Houston, TX 77019
    Phone: (713) 877-2500
    Fax: (713) 583-8662
    Email: cca@akersfirm.com


**ATTORNEYS FOR PLAINTIFFS**

# Exhibit 2

6/17/2022 4:20 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-001610
Adrian Rodriguez

## CAUSE NO. D-1-GN-22-001610

| | | |
|---|---|---|
| **NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE,** Plaintiffs | § § § § § | **IN THE DISTRICT COURT** |
| **v.** | § § § | |
| **ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS, LLC, PLJR HOLDINGS, LLC, CAROL JONES, DAVID JONES, PQPR HOLDINGS, LLC, JLJR HOLDINGS LIMITED, LLC, AEJ HOLDINGS, LLC, AEJ TRUST 2018,** | § § § § § § § § § § § | **TRAVIS COUNTY, TEXAS** |
| Defendants _____ | § § | **200th DISTRICT COURT** |
| **DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTO-PARISI, CARLOS M. SOTO, JILLIAN SOTO, WILLIAM SHERLACH, ROBERT PARKER, WILLIAM ALDENBERG,** Intervenors | § § § § § § § § § § § | |
| **v.** | § § | |
| **ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS, LLC, PLJR HOLDINGS, LLC, CAROL JONES, DAVID JONES, PQPR HOLDINGS, LLC, JLJR HOLDINGS LIMITED, LLC, AEJ HOLDINGS, LLC, AEJ TRUST 2018,** Defendants | § § § § § § § § § § § | |

---

## ORIGINAL PETITION IN INTERVENTION

---

### INTRODUCTION

After Alex Jones was sued for claiming the shooting of twenty-six children and educators at Sandy Hook Elementary School was a hoax, Jones diverted his assets to shell companies owned by insiders like his parents, his children, and himself. Jones stashed away millions of dollars from his fortune in this manner. The Texas Uniform Fraudulent Transfer Act prohibits defendants from playing shell games to shield assets from their creditors. And it allows creditors like these families to void such fraudulent transfers. The families of five children and two educators and one first responder to the shooting, all of whom brought suit against Jones in Connecticut, now join other Sandy Hook families who brought suit against Jones in Texas in asserting TUFTA claims against Jones and his insiders.

### PARTIES

**Intervenors**

1.     Intervenors David Wheeler and Francine Wheeler are the parents of first-grader Benjamin Wheeler. Benjamin was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

2.     Intervenors Jacqueline Barden and Mark Barden are the parents of first-grader Daniel Barden. Daniel was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

3. Intervenors Nicole Hockley and Ian Hockley are the parents of first-grader Dylan Hockley. Dylan was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

4. Intervenor Jennifer Hensel is the parent of first-grader Avielle Richman. Avielle was killed in the Sandy Hook Elementary School shooting on December 14, 2012. Ms. Hensel resides in Connecticut.

5. Intervenor Donna Soto is the mother, and plaintiffs Carlee Soto-Parisi, Carlos M. Soto, and Jillian Soto are the siblings, of first-grade teacher Victoria Leigh Soto. Vicki was killed in the Sandy Hook Elementary School shooting on December 14, 2012. They reside in Connecticut.

6. Intervenor William Sherlach was the spouse of Mary Sherlach, the school psychologist. Mary was killed in the Sandy Hook Elementary School shooting on December 14, 2012. Mr. Sherlach resides in Connecticut.

7. Intervenor Robert Parker is the father of first-grader Emilie Parker. Emilie was killed in the Sandy Hook Elementary School shooting on December 14, 2012. He resides in Washington state.

8. Intervenor William Aldenberg was a first responder to Sandy Hook Elementary School on December 14, 2012. He resides in Massachusetts.

9. This Petition in Intervention will refer to these seven families and one first responder as the "Intervenors" or the "Connecticut Intervenors."

**The Jones Defendants**

10. Defendant Alex E. Jones is a resident of Austin, Texas. He hosts radio and web-based news programming, including "The Alex Jones Show," and he owns Free Speech Systems, LLC, which operates the website infowars.com. Jones has filed an

answer and made an appearance in this lawsuit may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

11.     Defendant Free Speech Systems, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. Free Speech Systems, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

12.     This Petition in Intervention will refer to Alex Jones and Free Speech Systems, LLC as the "Jones Defendants."

13.     At all times relevant to this Petition in Intervention, these Jones Defendants operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

**The Jones Transferees**

14.     Defendant PQPR Holdings Limited LLC is a Nevada limited-liability company. PQPR Holdings Limited LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

15.     Defendant JLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. JLJR Holdings, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

16.     Defendant PLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. PLJR Holdings, LLC has filed an answer and made an appearance in this

lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

17.    Defendant Carol Jones is a resident of Austin, Texas. She is Alex Jones's mother and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. She can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever she can be found.

18.    Defendant David Jones is a resident of Austin, Texas. He is Alex Jones's father and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. He can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever he can be found.

19.    Defendant PQPR Holdings, LLC is an entity that has been previously identified by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. To date, Intervenors have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

20.    Defendant JLJR Holdings Limited, LLC is an entity listed as a member of PQPR Holdings Limited, LLC and PLJR Holdings, LLC. To date, Intervenors have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

21.    Defendant AEJ Holdings, LLC is an entity that has been identified previously by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. AEJ Holdings, LLC has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

22.     Defendant AEJ Trust 2018 is an entity that has been identified previously by the Jones Defendants as a party to transfers or obligations that Intervenors contend are fraudulent. AEJ Trust 2018 has filed an answer and made an appearance in this lawsuit and may be served with this Petition in Intervention pursuant to Texas Rules of Civil Procedure 21 and 21a.

23.     This Petition in Intervention will refer to PQPR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; Carol Jones; David Jones; PQPR Holdings, LLC; JLJR Holdings Limited, LLC; AEJ Holdings, LLC; and AEJ Trust 2018 as the "Jones Transferees."

24.     At all times relevant to this Petition in Intervention, the Jones Transferees and Defendant Alex Jones operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

### DISCOVERY-CONTROL PLAN

25.     Discovery should be conducted under Level 3 case of the Texas Rules of Civil Procedure.[1] Intervenors seek monetary relief over $1,000,000.[2]

### JURISDICTION AND VENUE

26.     The amount in controversy exceeds the Court's minimum jurisdictional requirements.

---

[1] *See* Tex. R. Civ. P. 190.

[2] *See* Tex. R. Civ. P. 47. Plaintiffs may also seek injunctive relief, in which case they may request expedited discovery. *See* Tex. R. Civ. P. 680.

27.     Venue is proper in Travis County because that's where certain Defendants resided when the cause of action accrued and because all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County.[3]

**BACKGROUND**

28.     Alex Jones, through his media company Free Speech Systems dba InfoWars, became a national figure by pushing conspiracy theories designed to go viral. Jones branded himself by claiming the Oklahoma City bombing was a government-sponsored hoax; the 9/11 attacks were a government-sponsored hoax, and so on. Leveraging his "news" content, Jones made millions by marketing and selling survivalist gear, herbal supplements, and various other products at a huge mark-up. The sale of these types of products on the InfoWars website and elsewhere enabled the Jones Defendants to earn a fortune.

## The Connecticut Intervenors sue the Jones Defendants

29.     In 2018, the Connecticut Intervenors sued the Jones Defendants for false light, defamation, intentional infliction of emotional distress, and violation of the Connecticut Unfair Trade Practices Act, based on lies Alex Jones and Free Speech Systems, LLC spread through Infowars.com, through social media re-broadcasts of his publications, and through radio re-broadcasts of his publications (the "Connecticut Cases").[4] The Intervenors allege, and have finally and conclusively

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 15.002.

[4] These consolidated actions, now pending in the Connecticut Judicial District of Waterbury are: *Lafferty, Erica, et al. v. Jones, Alex Emric, et al.,* No. UWY-CV-18-0604636-S; *Sherlach, William v. Jones, Alex Emric, et al.,* No. UWY-cv-18-064637-S; and *Sherlach, et al. v. Jones, Alex Emric, et al.*, No. UWY-CV-18-064638-S.

established,[5] that Alex Jones spread lies about them to an audience of millions over a period of approximately five years.

30.     In June 2019, the Connecticut Superior Court sanctioned Alex Jones and Free Speech Systems, LLC for prolonged discovery abuses. The Connecticut Supreme Court granted interlocutory review of the sanctions ruling and affirmed in all respects. *Lafferty v. Jones*, 336 Conn. 332 (2020), *cert denied*, 141 S. Ct. 2467 (2021). Despite the June 2019 sanction, the Jones Defendants continued to abuse the judicial process. In November 2021, the Connecticut Superior Court entered a disciplinary default against the Jones Defendants. Even following the default sanction, the Jones Defendants continued to abuse the judicial process. In March 2022, Jones refused to attend his court-ordered deposition, resulting in a contempt finding.

31.     After cases were filed in Texas by other Sandy Hook families whom Jones had defamed (the "Texas Cases"), and by the Connecticut Intervenors, the Jones Defendants started diverting their assets. From 2018 to 2021, for example, Alex Jones personally drew about $18 million from this active company, Free Speech Systems LLC. These draws were in addition to his yearly salary, which exceeded $600,000, and taken while Free Speech Systems operated at a net loss in the millions each of those years.

32.     Jones apparently drew this $18 million while his company, Free Speech Systems, was insolvent. On November 18, 2020, a company named PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt Free Speech Systems owes to PQPR. The supposed debt allegedly began accruing years earlier

---

[5] The Connecticut Superior Court entered a disciplinary default against Alex Jones and Free Speech Systems, LLC on November 15, 2021 (DN 574). As a result of that default, all of the Connecticut Intervenors' allegations are established as true, and Jones and Free Speech Systems, LLC have no further right to challenge them in the trial court.

as part of an arrangement where Free Speech Systems sells PQPR's products on the InfoWars website. Under this claimed arrangement, PQPR was to be reimbursed for the costs of the products and receive 70% of the sales revenue while Free Speech Systems retained the other 30%. In practice, however, Free Speech Systems supposedly kept 100% of the revenue for about seven years and did not pay for the goods PQPR provided—to the point where a $54 million debt had accumulated. All the while, PQPR not only supplied Free Speech Systems with more products to sell but also paid Free Speech Systems millions of dollars a year to advertise on the InfoWars website. PQPR still supplies the Jones Defendants with products to sell and pays for advertising on the website.

33.     So why would an independent business like PQPR continue to engage in such questionable transactions?

34.     Because PQPR is not actually an independent business. On paper, it's obviously an insider of the Jones Defendants. It is owned and operated directly or indirectly by Jones, his parents, and his children through an alphabet soup of shell entities like JLJR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; PQPR Holdings, LLC; AEJ Holdings, LLC; and AEJ Trust 2018. In actuality, it is simply an alter ego of Alex Jones. And any income PQPR receives—including from sources like the Jones Defendants—goes to Alex Jones and these Jones Transferees.

35.     After the Texas and Connecticut Cases began, the Jones Defendants started transferring large sums of money to the Jones Transferees. In the summer of 2021, as defaults were entered in Texas and a default in Connecticut appeared imminent, Free Speech Systems was transferring between $11,000 per day and $11,000 per week plus 60–80% of Free Speech Systems' sales revenue to PQPR. Free Speech Systems claims these payments are part of a "financial disentanglement between the two companies[.]"

In reality, they are transfers designed to siphon off the Jones Defendants' assets to make them judgment-proof.

36.    This fact is only confirmed by the jaw-dropping amount in transfers the Jones Defendants made while the Texas Cases and Connecticut Cases have been pending. In 2021 alone, the Jones Defendants transferred tens of millions more than it cost to operate that year out of Free Speech Systems, LLC.

## CAUSES OF ACTION

37.    The Connecticut Intervenors assert fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act to void transfers between the Jones Defendants and the Jones Transferees. Texas enacted TUFTA to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach.[6] Through TUFTA's statutory scheme, creditors may seek recourse for fraudulent transfers of assets or property.[7] The Connecticut Intervenors are creditors entitled to recourse under TUFTA because the Jones Defendants engaged in fraudulent transfers and conspired to commit fraudulent transfers.[8]

## Count 1—Fraudulent Transfer with actual intent to hinder, delay, or defraud under § 24.005(a)(1)

38.    The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

---

[6] *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).

[7] *Sargeant v. Al Saleh*, 512 S.W.3d 399, 411–12 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) (citing cases).

[8] *See* Tex. Bus. & Com. Code § 24.002 (defining "creditor" as a person who has a "claim" and "claim" as a right to payment including whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed); *see also Bank of Am., N.A. v. Fulcrum Enterprises, LLC*, 20 F. Supp. 3d 594, 601 (S.D. Tex. 2014) (explaining that a person my bring a TUFTA action as a creditor of the transferor by virtue of a legal action, pending and unliquidated at the time of transfer).

39.     The Jones Defendants are liable for engaging in fraudulent transfers as to present and future creditors under § 24.005(a)(1).[9] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor.[10] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[11]

40.     The Jones Defendants engaged in fraudulent transfers under this standard. During the Connecticut Cases—while the Connecticut Intervenors were creditors—the Jones Defendants transferred millions of dollars from Free Speech Systems for reasons unrelated to Free Speech Systems' business operations. In 2021 alone, they transferred from Free Speech Systems tens of millions more than it cost to operate that year.

41.     Transfers by the Jones Defendants while the Connecticut Cases were pending also include payments to insiders, like Alex Jones himself. From 2018 to 2021, for example, Jones apparently drew $18 million from Free Speech Systems, even though it was insolvent and operating at a net loss each of those years. These draws were in addition to (and about 30 times greater than) Jones's yearly salary.

42.     And since the Connecticut Cases began, the Jones Defendants also transferred large sums to other insiders, like the Jones Transferees. These sums include money the Jones Defendants started regularly transferring from Free Speech Systems to

---

[9] Tex. Bus. & Com. Code § 24.005(a)(1) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;").

[10] *Id.*

[11] *Id.*

insider PQPR. Specifically, PQPR started receiving as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. These payments are allegedly to pay just the interest on the fake $54 million obligation to PQPR, which the Jones Defendants decided that Free Speech incurred just after it became clear that the Connecticut cases would proceed to trial. [12] All the while the Jones Defendants retained possession and control of these money transfers and obligations, as the money PQPR receives from Free Speech Systems goes directly and indirectly to insiders like Alex Jones, his parents, and his children through some or more of the shell entities named as the Jones Transferees.

43.     These transfers and obligations that the Jones Defendants made and incurred were done with the actual intent to hinder, delay, or defraud their creditors—including the Connecticut Intervenors. That truth becomes especially glaring considering the badges of fraud surrounding these transfers and obligations.[13] Those badges include, for example, that the transfers and obligations were made to insiders who retained possession and control over the property; the transfers and obligations were concealed and made while the Texas Cases and Connecticut Cases were pending and while the Jones Defendants were insolvent; and that past and future transfers to PQPR will eliminate substantially all of the Jones Defendants' assets—as these essential assets paid to insider

---

[12] Less than a month after the Superior Court in Connecticut green-lighted the Connecticut cases to proceed when it denied a stay of the action, PQPR first filed a UCC Financing Statement claiming a security interest in Free Speech Systems, LLC's assets.

[13] Tex. Bus. & Com. Code § 24.005(b) ("(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.").

and supposed secured creditor PQPR will be subsequently transferred to insiders like Alex Jones, his parents, and his children through the Jones Transferees.

44.     The Jones Defendants are thus liable under § 24.005(a)(1) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Jones and the Jones Transferees as transferees. Among the remedies the Connecticut Intervenors seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[14]

## Count 2—Fraudulent Transfer without receiving reasonably equivalent value under § 24.005(a)(2)

45.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

46.     The Jones Defendants are liable for engaging in fraudulent transfers as to present and future creditors under § 24.005(a)(2).[15] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and either (1)  the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor

---

[14] Tex. Bus. & Com. Code § 24.008.

[15] Tex. Bus. & Com. Code § 24.005(a)(2) "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.").

were unreasonably small in relation to the business or transaction; or (2) the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[16] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[17]

47.    Under these standards the Jones Defendants committed fraudulent transfers as to the Connecticut Intervenors. While the Connecticut Cases were pending— that is, while the Connecticut Intervenors were their creditors—the Jones Defendants transferred millions of dollars from Free Speech Systems without receiving reasonably equivalent value in exchange, and while the Jones Defendants' assets were unreasonably small. Moreover, the Jones Defendants incurred millions of dollars in obligations they intended or reasonably should have believed they would be unable to pay as they became due.

48.    For instance, in 2021 the Jones Defendants transferred from Free Speech Systems tens of millions more than it cost to operate the company. These transfers were unrelated to operating the business and thus weren't in exchange for reasonably equivalent value. And these transfers far exceeded Free Speech Systems' assets—and any of the Jones Defendants for that matter—which were unreasonably small compared to the millions transferred away.

49.    And from 2018 to 2021, the Jones Defendants also transferred from Free Speech Systems to Alex Jones about $18 million on top of the already substantial salary he received. Of course, these $18 million in draws weren't for reasonably equivalent value,

---

[16] *Id.*

[17] *Id.*

especially given that Free Speech Systems was supposedly operating at a loss at that time and allegedly had other substantial debts to insider PQPR it hadn't been paying for years. And these $18 million in transfers virtually eliminated Free Speech Systems' remaining assets, which were already unreasonably small compared to the $18 million that had been transferred.

50.     And around the time that default judgments were rendered against the Jones Defendants in the Connecticut Cases and Texas Cases, the Jones Defendants supposedly incurred an obligation to insider PQPR to pay the interest on the fake $54 million debt to PQPR. (Until the default judgments entered, Free Speech Systems didn't pay anything on its supposed debt to PQPR.) Although Free Speech Systems was supposedly paying only interest, it paid as much as $11,000 per day *plus 60–80% of its sales revenue*. Incurring such a hefty obligation to cover only the interest on an alleged debt to an insider is not for reasonably equivalent value. And the Jones Defendants intended to incur or believed or reasonably should have believed that Free Speech Systems was incurring, debts beyond its ability to pay as they became due. After all, given that 100% of Free Speech Systems' sales revenue was already too little to cover its operating expenditures, counting on only 20–40% of sales revenue to cover operating expenditures would be quixotic. The Jones Defendants knew or should have known their new obligation to insider PQPR—which is directly and indirectly run by and benefits Alex Jones, his parents, and his children through the Jones Transferees—is beyond their ability to pay.

51.     This of course rests against the backdrop of the false $54 million obligation Free Speech Systems now claims it owes PQPR. Free Speech Systems apparently did not recognize any obligation to PQPR before the Connecticut and Texas Cases. Only after it

was clear that the Connecticut Cases would move forward to trial did any evidence of an obligation by Free Speech Systems to PQPR surface. That Free Speech Systems speciously and needlessly agreed to take on a $54 million obligation to an insider is not an obligation in exchange for reasonably equivalent value. And it's an obligation the Jones Defendants apparently intended to incur or believed or reasonably should have believed they would incur and would be beyond their ability to pay as they became due.

52.     The Jones Defendants are thus liable under § 24.005(a)(2) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[18]

## Count 3—Fraudulent Transfer without receiving reasonably equivalent value under § 24.006(a)

53.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

54.     The Jones Defendants are liable for engaging in fraudulent transfers as to present creditors under § 24.006(a).[19] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the

---

[18] Tex. Bus. & Com. Code § 24.008.

[19] Tex. Bus. & Com. Code § 24.006(a) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.").

obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[20]

55.     The Jones Defendants also committed fraudulent transfers under this standard. While the Connecticut Intervenors were creditors and while the Jones Defendants were insolvent, the Jones Defendants transferred millions of dollars without receiving reasonably equivalent value. These transfers include the tens of millions transferred from Free Speech Systems in 2021 that were unrelated to its operation. They also include $18 million that Jones drew from his business, Free Speech Systems. And they include the Jones Defendants' payments on just the interest on an alleged $54 million debt Free Speech Systems owes insider PQPR—payments that include as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. As explained in prior sections, none of these transfers and obligations were in exchange for reasonably equivalent value. And all were apparently made and incurred while the Jones Defendants were insolvent—or they became insolvent as a result of these transfers and obligations.

56.     The Jones Defendants are thus liable under § 24.006(a) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and

---

[20] *Id.*

the Jones Transferees the value of the transfers they received from the Jones Defendants.[21]

## Count 4—Fraudulent Transfer without receiving reasonably equivalent value under § 24.006(b)

57. The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

58. The Jones Defendants are liable for engaging in fraudulent transfers as to present creditors under § 24.006(b).[22] A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.[23]

59. The Jones Defendants engaged in fraudulent transfers under this standard. After the Connecticut Intervenors' claims against the Jones Defendants arose, the Jones Defendants started repaying an alleged debt to insider PQPR, which is owned directly and indirectly by Alex Jones, his parents, and his children through various entities—the Jones Transferees. Moreover, income that PQPR receives from Free Speech Systems, for example, is directly and indirectly paid to Alex Jones, his parents, and his children though the Jones Transferees. The Jones Defendants made these transfers to pay off this antecedent debt to insider PQPR directly (and Alex Jones and the Jones Transferees indirectly) while they were insolvent. And the Jones Transferees, including PQPR, had

---

[21] Tex. Bus. & Com. Code § 24.008.

[22] Tex. Bus. & Com. Code § 24.006(b) ("(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.").

[23] *Id.*

reasonable cause to believe that the Jones Defendants were insolvent at the time. After all, the Jones Defendants allegedly failed to the pay the supposed debt to PQPR for years to the point where the debt reached $54 million and exceeded the Jones Defendants' assets.

60.     And to the extent that the $18 million Jones drew from Free Speech Systems between 2018 and 2021 were payments for antecedent debts, such payments are also fraudulent transfers under this section. These transfers were made after the Connecticut Intervenors' claims against the Jones Defendants arose. As Free Speech Systems' sole owner, Alex Jones was its insider. And as its sole owner, Alex Jones had reasonable cause to believe that Free Speech Systems was insolvent—and in fact was insolvent—when these transfers to him were made.

61.     The Jones Defendants are thus liable under § 24.006(b) and the Connecticut Intervenors seek the remedies available under TUFTA against not only the Jones Defendants as transferors but also Alex Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Defendants to Alex Jones and the Jones Transferees or to recover from Alex Jones and the Jones Transferees the value of the transfers they received from the Jones Defendants.[24]

**Count 5—Conspiracy to commit fraudulent transfers**

62.     The Connecticut Intervenors reallege and incorporate by reference the prior facts alleged in this pleading.

---

[24] Tex. Bus. & Com. Code § 24.008.

63.     The Jones Defendants and the Jones Transferees are liable for conspiracy to commit fraudulent transfers.[25] The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt unlawful acts; and (5) proximately resulting in injury.[26]

64.     Here, the Jones Defendants and the Jones Transferees conspired to commit fraudulent transfers. As the prior paragraphs establish, the Jones Defendants and the Jones Transferees conspired to siphon the Jones Defendants' assets away to avoid paying the Connecticut Intervenors in the Connecticut Cases. The Jones Defendants and the Jones Transferees then proceeded with the course of action of transferring millions of dollars in assets away from the Jones Defendants and having the Jones Defendants incur millions of dollars in obligations to its insider Jones Transferees, who weren't sued in the Connecticut Cases. These overt acts are unlawful fraudulent transfers under TUFTA. And they proximately resulted in injury to the Connecticut Intervenors. Diverting assets away from the Jones Defendants to the Jones Transferees impairs the Connecticut Intervenors' ability to collect on their judgments.

### CONDITIONS PRECEDENT

65.     All conditions precedent to the Connecticut Intervenors' claims for relief have been performed or have occurred or have been waived.

---

[25] *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 743 (Bankr. S.D. Tex. 2020) (citing *Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) and *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008)).

[26] *Id.* at 743–44.

## ATTORNEY'S FEES AND INTEREST

66.     The Connecticut Intervenors seek costs and attorney's fees under § 24.013 of the Texas Uniform Fraudulent Transfer Act.[27]

67.     The Connecticut Intervenors further seek pre- and post-judgment interest on the amount of any judgment as allowed by law.

## REQUEST FOR DISCLOSURE

68.     Defendants are requested to disclose, within 50 days of the service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

## TRIAL BY JURY

69.     The Connecticut Intervenors respectfully request a trial by jury.

## NOTICE OF INTENT

70.     Under Rule 193.7, Connecticut Intervenors intend to use any documents produced in response to written discovery requests at trial and in any pretrial matters in the litigation.[28]

## PRAYER

For these reasons, Connecticut Intervenors respectfully request that Jones Defendants be cited to appear and answer and that judgment be awarded to Connecticut Intervenors for the following:

1)      avoidance of transfers or obligations to the extent necessary to satisfy Connecticut Intervenors' claims;

2)      an attachment or any other provisional remedy against the assets transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings;

---

[27] Tex. Bus. & Com. Code § 24.013.

[28] Tex. R. Civ. P. 193.7.

3) an injunction—including temporary and permanent injunctive relief—against further disposition by the debtors or transferees, or both, of the assets transferred or of other property;

4) an appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

5) to levy execution on assets transferred or their proceeds;

6) actual damages, including direct, indirect, special, incidental, and consequential damages;

7) exemplary damages;

8) costs and reasonably attorney's fees as are equitable and just;

9) pre- and post-judgment interest;

10) any other relief the circumstances may require.

Respectfully submitted

**CAIN & SKARNULIS PLLC**

By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011
Email: rchapple@cstrial.com

**BYMAN & ASSOCIATES PLLC**

By: */s/ Randy W. Williams*
Randy W. Williams
State Bar No. 21566850
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
Telephone: (281) 884-9262
Email: rww@bymanlaw.com

**ATTORNEYS FOR CONNECTICUT INTERVENORS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Original Petition in Intervention has been forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this 17th day of June 2022, as follows:

| Method of Service | Parties | Counsel |
|---|---|---|
| *Electronic Service* | Defendants<br>PQPR Holdings Limited LLC<br><br>JLJR Holdings, LLC<br><br>PLJR Holdings, LLC | Stephen W. Lemmon<br>lemmon@slollp.com<br>**STREUSAND, LANDON, OZBURN & LEMMON, LLP**<br>1801 S. MoPac Expressway<br>Suite 320<br>Austin, TX 78746<br>512-236-9900<br>512-236-9904—Fax |
| *Electronic Service* | Defendants<br>Alex E. Jones<br><br>Free Speech Systems, LLC<br><br>AEJ Holdings, LLC<br><br>AEJ Trust 2018 | Andino Reynal<br>areynal@frlaw.us<br>**THE REYNAL LAW FIRM, LLP**<br>917 Franklin Street<br>Suite 600<br>Houston, TX 77002<br>713-228-5900<br>713-820-6981—Fax |

_____/s/ Ryan E. Chapple_____
Ryan E. Chapple

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Arlana Prentice on behalf of Ryan Chapple
Bar No. 24036354
aprentice@cstrial.com
Envelope ID: 65565959
Status as of 6/30/2022 12:03 PM CST

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Federico Reynal | 24060482 | areynal@frlaw.us | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicholas Lawson | | nick.lawson@mhllp.com | 6/17/2022 4:20:23 PM | SENT |
| Avishay Moshenberg | | avi.moshenberg@mhllp.com | 6/17/2022 4:20:23 PM | SENT |
| Matthew Caldwell | | matthew.caldwell@mhllp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: PQPR HOLDINGS LIMITED LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Lemmon | | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: PLJR HOLDINGS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Lemmon | | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |

Associated Case Party: JLJR HOLDINGS LLC

| Name |
|------|
| Stephen Lemmon |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Arlana Prentice on behalf of Ryan Chapple
Bar No. 24036354
aprentice@cstrial.com
Envelope ID: 65565959
Status as of 6/30/2022 12:03 PM CST

Associated Case Party: JLJR HOLDINGS LLC

| Stephen W. Lemmon | 12194500 | lemmon@slollp.com | 6/17/2022 4:20:23 PM | SENT |
|---|---|---|---|---|

# Exhibit 3

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Subchapter V |
| | § | |
| Debtor | § | Case No. 22-60043 (cml) |

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| NEIL HESLIN, SCARLETT LEWIS, | § | |
| LEONARD POZNER, VERONIQUE DE | § | |
| LA ROSA, MARCEL FONTAINE, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adv. Pro. No. 22-06017-mmp |
| | § | |
| ALEX E. JONES, FREE SPEECH | § | |
| SYSTEMS, LLC, PQPR HOLDINGS | § | |
| LIMITED, LLC, PLJR HOLDINGS, LLC, | § | |
| PLJR HOLDINGS LIMITED, LLC, | § | |
| CAROL JONES, DAVID JONES, | § | |
| AEJ HOLDINGS, LLC, AEJ TRUST 2018, | § | |
| | § | |
| Defendants | § | |
| | § | |
| DAVID WHEELER, FRANCINE | § | |
| WHEELER, JACQUELINE BARDEN, | § | |
| MARK BARDEN, NICOLE HOCKLEY, | § | |
| IAN HOCKLEY, JENNIFER HENSEL, | § | |
| DONNA SOTO, CARLEE SOTO PARISI, | § | |
| CARLOS M. SOTO, JILLIAN SOTO, | § | |
| WILLIAM SHERLACH, ROBERT PARKER, | § | |
| WILLIAM ALDENBERG, | § | |
| | § | |
| Intervenors | § | |

---

## DECLARATION OF MARK BANKSTON

1. My name is Mark Bankston. I am a partner at Kaster Lynch Farrar & Ball, LLP in Houston, Texas. I am over 18 years of age and am fully competent to testify. I have personal knowledge of the facts stated in this declaration and make this declaration pursuant to 28 U.S.C. §1746.

2. I am lead trial counsel in multiple defamation lawsuits involving Free Speech Systems pending in Travis County, Texas, styled as *Neil Heslin, et al v. Alex Jones, et al.*, D-1-GN-18-001835; *Leonard Pozner, et. al. v. Alex Jones, et al.*, D-1-GN-18-001842; *Marcel Fontaine v. Free Speech Systems, LLC*, et al, D-1-GN-18-001605 (collectively the "Defamation Cases"). I am also counsel of record for Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine in this fraudulent-transfer lawsuit brought under the Texas Uniform Fraudulent Transfer Act (the "TUFTA Case"). The Defamation Cases and the TUFTA Case have all been assigned to Judge Maya Guerra Gamble.

3. In these Defamation Cases, over ten opposing attorneys have come and gone as Mr. Jones and Free Speech Systems, LLC have consistently defied court orders and refused to participate in these lawsuits in good faith, all while incurring over $1,300,000 in cumulative sanctions in nearly a dozen orders from the trial court. In an April 1, 2022 order regarding Defendants' four years of misconduct, Judge Guerra Gamble noted that "[t]he egregiousness and repetitiveness of Defendants' obstruction exhibits a disregard for and disrespect of the integrity of this Court and our judicial system." And just last week, on November 22nd, Judge Guerra Gamble took under advisement additional motions for sanctions against Mr. Jones and his counsel for their misconduct in the *Heslin/Lewis* trial. Mr. Jones and his companies were also sanctioned for frivolous pleadings by the Texas Court of Appeals in Austin. Multiple opposing counsel have cited ethical dilemmas in their withdrawal motions.

4. This past July and August 2022, the *Heslin/Lewis* case was tried before a Travis County jury. The jury returned a verdict of over $49 million against Mr. Jones and Free Speech Systems, LLC. On November 22, 2022, the court in that matter granted Plaintiffs' motion to enter a judgment that includes the jury's entire verdict. In doing so, Judge Guerra Gamble determined that the exemplary-damages cap did not apply.

5. I am also personally familiar with the proceedings in a related case filed by Sandy Hook parents filed in Connecticut, styled *Lafferty v. Jones.* I maintain a cooperative working relationship with counsel for the plaintiffs in *Lafferty,* and I have virtually attended or read the transcripts of discovery and sanctions hearings in that case. Mr. Jones has been held in contempt by the *Lafferty* court and repeatedly sanctioned.

6. Orders of the various courts in the Defamation Cases (including *Lafferty*) have found that the Defendants have refused to comply with discovery orders on every successive occasion, threatened the life of plaintiffs' counsel, repeatedly refused to cooperate with depositions, provided false discovery responses, tampered with evidence, submitted a fraudulent affidavit, made frivolous legal arguments, and have continuously introduced chaos and insolence into the proceedings.

7. In September of 2022, the *Lafferty* case was tried in Connecticut and the jury returned a verdict of nearly $1 billion. Together the with the *Heslin/Lewis* verdict, Jones and FSS owe over $1 billion to the Plaintiffs and Intervenors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 28, 2022 in Harris County, Texas.

_____

MARK D. BANKSTON

# Exhibit 4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE, Plaintiffs, v. ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ADV. PROC. NO. 22 - _____ |

## NOTICE OF REMOVAL

Defendant InfoW, LLC (f/k/a Infowars, LLC), pursuant to 28 U.S.C. §§ 1334 and 1452, Federal Rule of Bankruptcy Procedure 9027, and Local Rule of Bankruptcy Procedure 9027(b)(1), hereby files this Notice of Removal of Cause No. D-1-GN-22-001610, from the 200th District Court of Travis County, Texas (the "State Court"), where this action was commenced, to this Court. As grounds for such removal, InfoW, LLC states as follows:

1.　　On or about April 6, 2022, Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine original petition in the State Court, thus initiating the "State Court Lawsuit." The State Court Lawsuit names InfoW, LLC as a defendant.

2.　　On April 18, 2022 (the "Petition Date"), InfoW, LLC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, pending as Case No. 22–60020 (the "Bankruptcy Case").

3.　　InfoW, LLC timely files this Notice of Removal within 90 days of the Petition Date pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(2).

4.      The United States District Court for the Western District of Texas has original jurisdiction over this action pursuant to 28 U.S.C. §1334(b) as the State Court Lawsuit is "related to" the Bankruptcy Case. Additionally, there the diversity jurisdiction under 28 U.S. Code § 1332.

5.      Removal to this Bankruptcy Court is proper pursuant to 28 U.S.C. § 1452, Federal Rule of Bankruptcy Procedure 9027, and the Order of Reference of Bankruptcy Cases and Proceedings of the U.S. District Court for the Western District of Texas (the "Order of Reference"). The State Court Lawsuit was filed in Travis County, Texas. The U.S. District Court for the Western District of Texas, Austin Division, is the United States district and division embracing that county. The Order of Reference provides that "[a]ll bankruptcy cases and proceedings filed under Title 11 of the United States Code, or arising from or related to any case or proceeding filed under Title 11, shall be automatically referred to the bankruptcy judges of this district" subject to exceptions that do not apply here.

*[Remainder of Page Intentionally Left Blank]*

Dated: April 18, 2022

**PARKINS LEE & RUBIO LLP**

*/s/R. J. Shannon*
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
      rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2022, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Attn: Mark Bankson, William Ogden
Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Avi Moshenberg, Nick Lawson,
Matthew Caldwell
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

Attn: Cordt Akers
The Akers Firm PLLC
2401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

*/s/ R. J. Shannon*
R. J. Shannon

# Exhibit 5



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 07, 2022**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE PENDING IN |
| | § | U.S. BANKRUPTCY COURT FOR THE |
| | § | SOUTHERN DISTRICT OF TEXAS |
| INFOW, LLC, *ET AL.*, | § | CASE NO. 22-60020 |
| | § | |
| DEBTORS. | § | CHAPTER 7 |
| | § | |
| | § | |
| NEIL HESLIN, SCARLETT LEWIS, | § | |
| LEONARD POZNER, VERONIQUE DE LA ROSA | § | |
| & MARCEL FONTAINE | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADVERSARY NO. 22-06004-MMP |
| | § | |
| INFOW, LLC, ALEX E. JONES & | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

ORDER GRANTING MOTION

On this day came on to be considered *Plaintiffs' Motion for Abstention and Remand* (ECF No. 2) (the "Motion for Remand"). Defendant InfoW, LLC, in *InfoW, LLC's Motion to Strike Removal and Allow Remand* (ECF No. 5), has indicated that it is unopposed to the Plaintiffs' request to remand this suit, and the Court has received no other timely responses to the Motion for Remand pursuant to Local Rule 7007(b)(2). Further, the Court notes that the debtors, the United States trustee, and the subchapter V trustee in the underlying chapter 11 case in the U.S. Bankruptcy Court for the Southern District of Texas have filed a *Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases*[1] indicating that the aforementioned parties have agreed to the dismissal of the debtors' chapter 11 cases. For these reasons, the Court is of the opinion that the Motion for Remand should be granted.

It is, therefore, **ORDERED** that the Motion for Remand is hereby **GRANTED**.

It is further **ORDERED** that the above-captioned adversary proceeding is hereby **REMANDED** to the 200th District Court, Travis County, Texas, for adjudication and disposition.

It is further **ORDERED** that the Clerk of Court may close this adversary proceeding.

# # #

---

[1] *See* Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases, In re InfoW, LLC, No. 22-60020 (Bankr. S.D. Tex. June 1, 2022), ECF No. 110.

# Exhibit 6



**MAYA GUERRA GAMBLE**
Judge, 459th District Court
**Heman Marion Sweatt Travis County Courthouse P.O. Box 1748**
**Austin, Texas 78767**
**512-854-9384**

April 19, 2022

Avi Moshenberg
1001 Fannin St, Ste 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

F. Andino Reynal
PO Box 61129
Houston, TX 77208
areynal@frlaw.us

Mark Bankston
1117 Herkimer
Houston, TX 77008
mark@fbtrial.com

Joseph Magliolo Jr
917 Franklin St, Ste 600
Houston, TX  77002
jmagliolo@frlaw.us

Cordt Akers
3401 Allen Parkway, Ste 101
Houston, TX 77019
cca@akersfirm.com

**RE: Case No. D-1-GN-22-001610**; *Neil Heslin, Scarlett Lewis, Leonard Pozner,*
*Veronique de la Rosa, and Marcel Fontaine v Alex E Jones, Infowars LLC, Free Speech*
*Systems LLC, PQPR Holdings Limited LLC, JLJR Holdings LLC, PLJR Holdings LLC,*
*Carol Jones, David Jones, PQPR Holding LLC, JLJR Holdings Limited LLC, AEJ*
*Holdings LLC, AEJ Trust 2018; in the 200th Judicial District, Travis County, Texas*

Dear Counsel:

This case is now assigned to me pursuant to Travis County Local Rule 2.6.  All matters,
**including agreed motions and orders**, as well as any final proceedings, shall be heard and
considered by this Court only. If you need to set a hearing, please confer with each other and
then contact my Judicial Executive Assistant, Shannon Matusek-Steele, at (512) 854-9384.

Please remember that you must deliver all pleadings directly to the 459th as well as file them with the District Clerk. I will not receive them automatically. You may email them to Ms. Matusek-Steele and we will also create a Box drive folder in advance of any hearings. The Court requires hard copies of any filings larger than 15 pages be delivered to the District Judges Office, Room 327.

Counsel must attempt to agree on a briefing schedule, including hearing dates, which should be provided to the Court *within 60 days* of the date of this letter. If the parties cannot agree to the schedule, please contact the court's Judicial Executive Assistant, Shannon Matusek-Steele at (512) 854-9384. Additionally, please coordinate with Ms. Matusek-Steele for dates and times of any hearings that you may need to set.

For any setting, you must announce in compliance with Chapter 3 of the Local Rules of the District Courts of Travis County and the most recent Travis County Civil and Family Courts Emergency Order. I look forward to working with you on this case.

Very Truly Yours,

Maya Guerra Gamble
Judge, 459th District Court

MGG/sms
cc: Velva Price, District Clerk

# Exhibit 7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMER REGARDING DEBTOR'S SCHEDULES AND STATEMENTS

The Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed by Free Speech Systems, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") are unaudited and were prepared pursuant to section 521 of Title 11 of the United States Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by the Debtor's chief restructuring officer (the "CRO"). While the CRO has made reasonable efforts to file complete and accurate Schedules and Statements based upon information available at the time of preparation, the Schedules and Statements remain subject to further review and verification by the Debtor. Subsequent information may result in material changes in financial and other data contained in the Schedules and Statements. The Debtor reserves the right to amend its Schedules and Statements from time to time as may be necessary or appropriate. The Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements (the "Global Notes") is incorporated by reference in, and comprises an integral part of, the Schedules and Statements and should be referred to and reviewed in connection with any review of the Schedules and Statements.

1.  Description of the Cases and "As Of" Information Date. On July 29, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor currently operates its business and possess its property as a debtor-in-possession under section 1184 of the Bankruptcy Code. Unless otherwise noted, all asset and liability information is as of the Petition Date.

2.  Basis of Presentation. These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

3.  Causes of Action. Despite its reasonable efforts, as described above, the Debtor may not have set forth all of its claims, causes of actions and potential recoveries in its Schedules and Statements. The Debtor reserves all rights with respect to any causes of action it may possess, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

4.      Insiders. The listing or failure to list a person or other entity as an "insider" in the Schedules and Statements is not intended to be nor should it be construed as a binding admission that such person or entity is or is not an insider. The Debtor reserves the right to dispute or challenge the designation of any individual or entity in connection with any other matter arising in the Debtor's chapter 11 case.

5.      Intellectual Property Rights. Any omission of intellectual property from the Schedules and Statements shall not be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms or have been assigned or otherwise transferred pursuant to a sale, acquisition or other transaction. In accordance with the foregoing, the Debtor reserves all of its rights with respect to the legal status of any and all intellectual property rights, regardless of whether such intellectual property rights are or are not listed in the Schedules and Statements.

6.      Summary of Significant Reporting Policies. The Schedules and Statements have been signed by W. Marc Schwartz, the CRO to the Debtor. In reviewing and signing the Schedules and Statements, Mr. Schwartz has necessarily relied upon the efforts, statements, and representations of the Debtor's business records and personnel. Mr. Schwartz has not personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors. The Debtor made reasonable efforts to accurately report asset, liability, disbursement and other information on its Statements and Schedules, and the Debtor adopted the following conventions in the preparation of the Schedules and Statements.

a.      Fair Market Value; Book Value. Unless otherwise noted, the value of each asset and liability of the Debtor is shown on the basis of the book value of such asset or liability in the Debtor's accounting books and records. As applicable, assets that have been fully depreciated or were expensed for accounting purposes have no net book value. As a result, the value of the Debtor's assets and liabilities set forth on the Schedules and Statements may not always reflect the current market values of such property and/or liabilities. The Debtor reserves its right to amend or adjust the value of each asset or liability set forth herein.

b.      Liabilities. The Debtor reserves the right to dispute any liability indicated in its Schedules notwithstanding the designation in the Schedules and Statements.

c.      Claims. The Debtor's Schedules and Statements list creditors and set forth the Debtor's estimate of the claims of creditors as of the Petition Date. The Bankruptcy Court has authorized the Debtor to, among other things make payments to certain critical vendors and utility providers. As a result, the actual unpaid claims of creditors that ultimately may be allowed in this case may differ from the amounts set forth in the Schedules and Statements. The inclusion of any such amounts in the Schedules and Statements shall not be deemed to obligate the Debtor to pay such amounts in and of themselves.

d.      Disputed, Contingent and/or Unliquidated Claims. Schedules D and E/F permit the Debtor to designate a claim as disputed, contingent and/or unliquidated. A failure

to designate a claim on any of these Schedules as disputed, contingent and/or unliquidated does not constitute an admission that such claim is not subject to objection. The Debtor reserves the right to dispute, or assert offsets or defenses to, any claim reflected on these Schedules as to amount, liability, or status. Moreover, the Debtor reserves the right to amend its Schedules and Statements as necessary and appropriate.

7. <u>General Conventions Relating to the Schedules of Assets and Liabilities</u>. The Debtor adopted the following conventions in connection with the preparation of the Schedules:

  a. <u>Schedule D</u>. Except as otherwise agreed pursuant to a stipulation or agreed order entered by the Bankruptcy Court, the Debtor reserves the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of the Debtor. Moreover, although the Debtor may have scheduled claims of various creditors as secured claims, the Debtor reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim. The descriptions provided on Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

  b. <u>Schedule G</u>. While reasonable efforts have been made to ensure the accuracy of the Schedule of Executory Contracts, inadvertent errors or omissions may have occurred. The Debtor hereby reserves all rights to dispute the validity, status or enforceability of any contract, agreement or lease set forth on Schedule G and to amend or supplement such Schedule as necessary. The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed therein. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Additionally, the Debtor may be parties to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps and other miscellaneous agreements. Such agreements, if any, are not set forth on Schedule G. Certain of the agreements listed on

3

Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtor reserves all rights, claims and causes of action with respect to the contracts and agreements listed on these Schedules and Statements, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

c.  <u>Schedule H</u>. Codefendants in litigation matters involving the Debtor are not listed in Schedule H unless the trial court has made a ruling that results in an identity of interest between the Debtor and such co-defendant.

[*Remainder of Page Intentionally Left Blank*]

**Fill in this information to identify the case:**

Debtor name  Free Speech Systems, LLC

United States Bankruptcy Court for the: Southern District of Texas
(State)

Case number (If known): 22-60043

☐ Check if this is an
amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals                    12/15

---

### Part 1: Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*............................................................. $ 1,335,971.23

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*........................................................... $ 13,327,463.23

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*............................................................. $ 14,663,434.46

---

### Part 2: Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*................................ $ 53,646,687.84

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ................................... $ _____

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ............................... + $ 995,824.64

4. **Total liabilities**................................................................................. $ 54,642,512.48
   Lines 2 + 3a + 3b

---

**Fill in this information to identify the case:**

Debtor name  Free Speech Systems, LLC

United States Bankruptcy Court for the: Southern _____ District of Texas _____
                                                                    (State)

Case number (if known):  22-60043

☐ Check if this is an amended filing

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property
12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand**  $ 951.31

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*  
Please see attached schedule for additional Bank accounts

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. ▉▉▉▉▉▉ | Checking | 8 5 6 3 | $ 118,999.04 |
| 3.2. ▉▉▉▉▉▉ | Checking | 8 5 1 4 | $ 1,163,808.79 |

*See continuation sheet*

4. **Other cash equivalents** *(Identify all)*

4.1. ___  —  $_____
4.2. _____  $_____

5. **Total of Part 1**  $1,284,759.14

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and prepayments |
|---|---|

6. Does the debtor have any deposits or prepayments?

☐ No. Go to Part 3.
☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. Deposits, including security deposits and utility deposits

Description, including name of holder of deposit

| 7.1. ▉▉▉▉▉▉ (Credit card processing) | $ 500,000.00 |
|---|---|
| 7.2. LIT Industrial (Security Deposit) ▉▉▉▉▉ | $ 33,360.00 |

Debtor   Free Speech Systems, LLC
         _____
         Name

Case number (if known) 22 60043 _____

---

**8  Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**   Please see attached schedule for additional prepayments

Description, including name of holder of prepayment

8.1. The Travelers Companies (Prepaid Insurance) _____   $ 1,224.50

8.2. The Hartford (Prepaid Insurance) _____   $ 1,444.31

* See continuation sheet*

**9.  Total of Part 2.**                                                                      $ 687,969.95

Add lines 7 through 8. Copy the total to line 81.

---

## Part 3:   Accounts receivable

**10.  Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

|  |  | Current value of debtor's interest |
|---|---|---|
| **11  Accounts receivable** | | |
| 11a. 90 days old or less: | 0.00 (face amount) − 0.00 (doubtful or uncollectible accounts) = → | $ 0.00 |
| 11b. Over 90 days old: | 9,788,413.22 (face amount) − 0.00 (doubtful or uncollectible accounts) = → | $ 9,788,413.22 |

**12  Total of Part 3**                                                                       $ 9,788,413.22

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

## Part 4:   Investments

**13.  Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|
| **14.  Mutual funds or publicly traded stocks not included in Part 1** | | |
| Name of fund or stock: | | |
| 14.1. _____ | _____ | $ _____ |
| 14.2. _____ | _____ | $ _____ |
| **15.  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** | | |
| Name of entity:                    % of ownership: | | |
| 15.1. _____  _____ % | _____ | $ _____ |
| 15.2. _____  _____ % | _____ | $ _____ |
| **16.  Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1** | | |
| Describe: | | |
| 16.1. _____ | _____ | $ _____ |
| 16.2. _____ | _____ | $ _____ |

**17.  Total of Part 4**                                                                      $ 0.00

Add lines 14 through 16. Copy the total to line 83.

---

Debtor    Free Speech Systems, LLC             Case number *(if known)* 22-60043
       Name

---

## Part 5:   Inventory, excluding agriculture assets

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | | | | |
| _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | | | | |
| Merchandise | 07/29/2022 MM / DD / YYYY | $ 1,327,107.43 | Net Book Value | $ 1,327,107.43 |
| **22. Other inventory or supplies** | | | | |
| _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.          $ 1,327,107.43

**24. Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value 89,882.37    Valuation method Net Book Value    Current value 89,882.37

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

## Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| **29. Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment (Other than titled motor vehicles)** | | | |
| _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $__ | _____ | $_____ |

Debtor    Free Speech Systems, LLC
          _____
          Name

Case number (if known) 22-60043

---

33. **Total of Part 6.**
    Add lines 28 through 32. Copy the total to line 85.

    $ 0.00

34. **Is the debtor a member of an agricultural cooperative?**

    ☐ No

    ☐ Yes. Is any of the debtor's property stored at the cooperative?

       ☐ No

       ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

    ☐ No

    ☐ Yes. Book value $_____ Valuation method _____ Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

    ☐ No

    ☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

    ☐ No

    ☐ Yes

---

**Part 7:** Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ☐ No. Go to Part 8.

    ☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| Rugs, Chairs, Lamps and other Office Furnitures | $ 3,285.92 | Net Book Value | $ 3,285.92 |
| 40. **Office fixtures** | | | |
|  | $ ___ | _____ | $_____ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| Computer Equipments and Software | $ 44,180.49 | Net Book Value | $ 44,180.49 |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 Artwork | $ 73.00 | Net Book Value | $ 73.00 |
| 42.2 _____ | $_____ | _____ | $_____ |
| 42.3 _____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**
    Add lines 39 through 42. Copy the total to line 86.

    $ 47,539.41

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

    ☐ No

    ☑ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

    ☑ No

    ☐ Yes

---

Debtor **Free Speech Systems, LLC**
Name

Case number *(if known)* 22-60043

---

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☑ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e , VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 2021 Winnebago Adventurer Model 35F (VIN:1F66F5DN1LOA03038) | $ 0.00 | Net Book Value | $ 0.00 |
| 47 2 2015 Ford F-450 Model F45 (VIN: 1FDUF4HT0FEC06013) | $ 148,890.74 | Net Book Value | $ 148,890.74 |
| 47 3 _____ | $ _____ | _____ | $ _____ |
| 47.4 _____ | $ _____ | _____ | $ _____ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 _____ | $ _____ | _____ | $ _____ |
| 48.2 _____ | $ _____ | _____ | $ _____ |
| **49. Aircraft and accessories** | | | |
| 49.1 _____ | $ _____ | _____ | $ _____ |
| 49 2 _____ | $ _____ | _____ | $ _____ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| Production and Other Equipments | $ 40,262.53 | Net Book Value | $ 40,262.53 |

**51. Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

$ 189,153.27

**52. Is a depreciation schedule available for any of the property listed in Part 8?**
☐ No
☑ Yes

**53. Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

---

Debtor   Free Speech Systems, LLC
Name

Case number *(if known)*   22-60043

---

## Part 9:   Real property

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 Warehouse Improvement (3019 Alvin Devane Blvd Austin, TX 78741) | Leasehold Improvement | $ 1,335,971.23 | Net Book Value | $ 1,335,971.23 |
| 55.2 _____ | _____ | $ _____ | _____ | $ _____ |
| 55.3 _____ | _____ | $ _____ | _____ | $ _____ |
| 55.4 _____ | _____ | $ _____ | _____ | $ _____ |
| 55.5 _____ | _____ | $ _____ | _____ | $ _____ |
| 55.6 _____ | _____ | $ _____ | _____ | $ _____ |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ 1,335,971.23

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☑ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

## Part 10:   Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets**<br>_____ | $ _____ | _____ | $ _____ |
| **61. Internet domain names and websites**<br>Domain Names, Websites and Website Developments | $ 2,520.81 | Net Book Value | $ 2,520.81 |
| **62. Licenses, franchises, and royalties**<br>_____ | $ _____ | _____ | $ _____ |
| **63. Customer lists, mailing lists, or other compilations**<br>_____ | $ _____ | _____ | $ _____ |
| **64. Other intangibles, or intellectual property**<br>_____ | $ _____ | _____ | $ _____ |
| **65. Goodwill**<br>_____ | $ _____ | _____ | $ _____ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$ 2,520.81

---

Debtor  Free Speech Systems, LLC
Name

Case number (if known) 22-60043

---

67. **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**
☑ No
☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☐ No
☑ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
☑ No
☐ Yes

### Part 11:  All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.
☑ No. Go to Part 12.
☐ Yes. Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|

71. **Notes receivable**
Description (include name of obligor)

_____  —  _____  = ➜  $_____
                              Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

_____  Tax year _____  $_____
_____  Tax year _____  $_____
_____  Tax year _____  $_____

73. **Interests in insurance policies or annuities**

_____  $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____  $

Nature of claim  _____
Amount requested  $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____  $_____

Nature of claim  _____
Amount requested  $__    ____

76. **Trusts, equitable or future interests in property**

_____  $_____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

_____  $_____
_____  $_____

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.

$ 0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
☐ No
☐ Yes

| Debtor | Free Speech Systems, LLC | | Case number (if known) | 22-60043 |
|---|---|---|---|---|
| | Name | | | |

## Part 12: Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** Copy line 5, Part 1. | $ 1,284,759.14 | |
| 81. **Deposits and prepayments.** Copy line 9, Part 2. | $ 687,969.95 | |
| 82. **Accounts receivable.** Copy line 12, Part 3. | $ 9,788,413.22 | |
| 83. **Investments.** Copy line 17, Part 4. | $ 0.00 | |
| 84. **Inventory.** Copy line 23, Part 5. | $ 1,327,107.43 | |
| 85. **Farming and fishing-related assets.** Copy line 33, Part 6. | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** Copy line 43, Part 7. | $ 47,539.41 | |
| 87. **Machinery, equipment, and vehicles.** Copy line 51, Part 8. | $ 189,153.27 | |
| 88. **Real property.** Copy line 56, Part 9. ....................................➔ | | $ 1,335,971.23 |
| 89. **Intangibles and intellectual property.** Copy line 66, Part 10. | $ 2,520.81 | |
| 90. **All other assets.** Copy line 78, Part 11. | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ............................91a. | $ 13,327,463.23 | 91b. $ 1,335,971.23 |
| 92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. .................................................... | | $ 14,663,434.46 |

Debtor: Free Speech Systems, LLC                    Case Number: 22 - 60043

Part 1.
3. Additional checking, savings, money market, or financial brokerage accounts

| Name of Institution | Account Type | Last 4 digits of Account Number | Current value of debtor's Interest |
|---|---|---|---|
| ████████ | Checking | 8522 | $1,000.00 |
| ████████ | Checking | 8621 | $0.00 |
| ████████ | Checking | 5675 | $0.00 |
| ████████ | Checking | 8746 | $0.00 |

Part 2.
8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent

| Description, including name of holder of prepayment | Current value of debtor's Interest |
|---|---|
| Frost Insurance Agency | $4,899.14 |
| Stratus | $2,124.27 |
| Shannon & Lee LLP | $100,000.00 |
| ATXHD, Inc | $41,342.00 |
| Protection 1 Alarm | $2,559.73 |
| CubeSmart | $1,016.00 |

[To Supplement: Retainer of The Law ●ffices of Ray Battaglia, PLLC on the Petition Date - Est. $77,235.00]

**Fill in this information to identify the case:**

Debtor name    Free Speech Systems, LLC

United States Bankruptcy Court for the:   Southern    District of   Texas
                                                    (State)

Case number (If known):   22-60043

☐ Check if this is an amended filing

## Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

**Part 1:**    **List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|

**2.1** **Creditor's name**

PQPR Holdings Limited LLC

Describe debtor's property that is subject to a lien

Please see attached      $ 53,646,687.84    $ 14,663,434.46

**Creditor's mailing address**

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

Describe the lien
Uniform Commercial Code Lien

Is the creditor an insider or related party?
☐ No
☑ Yes

**Creditor's email address, if known**

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Date debt was incurred**   2020/08/13

**Last 4 digits of account number**   ___ ___ ___ ___

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor, and its relative priority.

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**2.2** **Creditor's name**

Describe debtor's property that is subject to a lien

$_____    $_____

**Creditor's mailing address**

Describe the lien

**Creditor's email address, if known**

Is the creditor an insider or related party?
☐ No
☐ Yes

**Date debt was incurred**

Is anyone else liable on this claim?
☐ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Last 4 digits of account number**   ___ ___ ___ ___

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
     ☐ No. Specify each creditor, including this creditor, and its relative priority.

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

     ☐ Yes. The relative priority of creditors is specified on lines ___

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    $_____

| Debtor | Free Speech Systems, LLC | Case number *(if known)* | 22-60043 |
|---|---|---|---|
| | Name | | |

## Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |

Form 206D      Official Part 2 of **Schedule D: Creditors Who Have Claims Secured by Property**      page <u>2</u> of <u>3</u>

Free Speech Systems, LLC

## 2.1 Describe debtor's property that is subject to a lien

(1) All fixtures and personal property of every kind and nature, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter of credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Haappease, Gut Fution, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Incuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survivial Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and all gross revenue, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with repect to any of the foregoing

Fill in this information to identify the case:

Debtor **Free Speech Systems LLC**

United States Bankruptcy Court for the: **Southern** District of **Texas**
(State)

Case number **22-60043**
(If known)

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims
12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☒ No. Go to Part 2.
   ☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|

**2.1** Priority creditor's name and mailing address

_____
_____
_____

**Date or dates debt was incurred**
_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

As of the petition filing date, the claim is: $_____ $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**
_____

**Is the claim subject to offset?**
☐ No
☐ Yes

**2.2** Priority creditor's name and mailing address

_____
_____
_____

**Date or dates debt was incurred**
_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

As of the petition filing date, the claim is: $_____ $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**
_____

**Is the claim subject to offset?**
☐ No
☐ Yes

**2.3** Priority creditor's name and mailing address

_____
_____
_____

**Date or dates debt was incurred**
_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

As of the petition filing date, the claim is: $_____ $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**
_____

**Is the claim subject to offset?**
☐ No
☐ Yes

## Part 2: List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|

**3.1**
Nonpriority creditor's name and mailing address
Addshoppers, Inc

15806 Brookway Dr Ste 200
Huntersville, NC 28078

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 2,989.00

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

**3.2**
Nonpriority creditor's name and mailing address
Air Supply of North Texas aka Precision Oxygen

2829 Fort Worth Avenue
Dallas, TX 75211

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 105.48

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

**3.3**
Nonpriority creditor's name and mailing address
Airco Mechanical, LTD

PO Box 1598
Round Rock, TX 78680

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 17,268.71

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

**3.4**
Nonpriority creditor's name and mailing address
AT&T Mobile

PO Box 5001
Carol Stream, IL 60197-5001

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 5,167.41

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

**3.5**
Nonpriority creditor's name and mailing address
Atomial, LLC

1920 E. Riverside Drive Suite A-120 #124
Austin, TX 78741

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 50,400.00

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

**3.6**
Nonpriority creditor's name and mailing address
Austin Security & Investigation Solutions

PO Box 2904
Pflugerville, TX 78691

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 5,961.87

Date or dates debt was incurred _____
Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

Debtor _____ Case number *(if known)* _____

Name

| | |
|---|---|
| **Part 2:** | **Additional Page** |

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.7** Nonpriority creditor's name and mailing address

Blott, Jacquelyn, Attorney at Law

200 University Boulevard Suite 225 #251

Round Rock, TX 78665

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 58,280.00

**3.8** Nonpriority creditor's name and mailing address

City of Austin

PO Box 2267

Austin, TX 78783

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 6,532.68

**3.9** Nonpriority creditor's name and mailing address

CTRMA Processing

PO Box 734182

Dallas, TX 75373

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 24.23

**3.10** Nonpriority creditor's name and mailing address

eCommerce CDN, LLC

221 E 63rd Street

Savannah, GA 31405

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 27,270.00

**3.11** Nonpriority creditor's name and mailing address

Elevated Solutions Group

706 W Ben White Blvd, Bldg B, Ste 188

Austin, TX 78740

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 319,148.16

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.12** | **Nonpriority creditor's name and mailing address**
Getty Images, Inc

PO Box 953604

St. Louis, MO 63195-3604

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

$ 9,201.25

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.13** | **Nonpriority creditor's name and mailing address**
Gibson, Ronald

4012 Pleasant Grove Church Rd

Shelby NC, 28150-2842

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 3,000.00

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.14** | **Nonpriority creditor's name and mailing address**
Gracenote Media Services, LLC

29421 Network Place

Chicago, IL 60673-1294

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 119.98

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.15** | **Nonpriority creditor's name and mailing address**
Greenair, Inc

23569 Center Ridge Road

Westlake, OH 44145

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 12,240.00

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.16** | **Nonpriority creditor's name and mailing address**
Impact Fire Services LLC

PO Box 735063

Dallas, TX 75373-5063

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 165.00

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

Debtor _____  Case number *(if known)* _____

Name

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.17** Nonpriority creditor's name and mailing address

JCE SEO

6101 Broadway

San Antonio, TX 78209

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

$ 5,000.00

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

---

**3.18** Nonpriority creditor's name and mailing address

JW JIB Productions, LLC

2921 Carvelle Drive

Riviera Beach, FL 33404

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 7,000.00

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

---

**3.19** Nonpriority creditor's name and mailing address

Konica Minolta Premier Finance

PO Box 41602

Philadelphia, PA 19101-1602

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 1,847.87

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

---

**3. 20** Nonpriority creditor's name and mailing address

Kount An Equifax Company

PO Box 740253

Atlanta, GA 30374

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 11,172.00

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

---

**3.21** Nonpriority creditor's name and mailing address

Lumen/Level 3 Communications

PO Box 910182

Denver, CO 80291-0182

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

$ 7,906.43

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

Debtor _____  Case number *(if known)* _____

Name

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.22** | **Nonpriority creditor's name and mailing address**

Lyman, Daniel

5832 Elton Road

Venice, FL 34293

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 3,500.00

---

**3.23** | **Nonpriority creditor's name and mailing address**

PQPR Holdings

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 0.00

---

**3.24** | **Nonpriority creditor's name and mailing address**

MRJR Holdings, LLC

PO Box 27740

Las Vegas, NV 89426

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 0.00

---

**3.25** | **Nonpriority creditor's name and mailing address**

Sparkletts & Sierra Springs

PO Box 660579

Dallas, TX 75266-0579

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 1,084.14

---

**3.26** | **Nonpriority creditor's name and mailing address**

Texas Gas Service

PO Box 219913

Kansas City, MO 64121

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 1,078.28

---

Debtor _____  Case number *(if known)* _____
Name

| Part 2: | Additional Page |
|---------|-----------------|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | **Amount of claim**

---

**3.27** | **Nonpriority creditor's name and mailing address**
Willow Grove Productions

1810 Rockcliff Road

Austin, TX 78746

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

$ 2,700.00

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.28** | **Nonpriority creditor's name and mailing address**
WMQM-AM 1600

21 Stephen Hill Road

Atoka, TN 38004

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 2,500.00

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.29** | **Nonpriority creditor's name and mailing address**
American Express

200 Vesey Street

New York, NY 10285

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:** _____

$ 54,279.78

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.30** | **Nonpriority creditor's name and mailing address**
David Jones

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _____

$ 150,000.00

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.31** | **Nonpriority creditor's name and mailing address**
Campco

4625 W. Jefferson Blvd

Los Angeles, CA 90016

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** _____

$ 0.00

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

Debtor _____ Case number (if known) _____
      Name

| Part 2: | Additional Page |
|---|---|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

---

**3.32** | **Nonpriority creditor's name and mailing address**

CustomTattoNow.com

16107 Kensington Dr #172

Sugar Land, TX 77479

**As of the petition filing date, the claim is:**
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.33** | **Nonpriority creditor's name and mailing address**

David Icke Books Limited

1a Babbington Lane

Derby, England DE11SU

**As of the petition filing date, the claim is:**
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.34** | **Nonpriority creditor's name and mailing address**

American Media/Reality Zone

PO Box 4646

Thousand Oaks, CA 91359

**As of the petition filing date, the claim is:**
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.35** | **Nonpriority creditor's name and mailing address**

Justin Lair

1313 Lookout Ave

Klamath Falls, OR 97601

**As of the petition filing date, the claim is:**
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.36** | **Nonpriority creditor's name and mailing address**

RatsMedical.com

1211 E Bridle Trail Rd

Draper, UT 84020

**As of the petition filing date, the claim is:**
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

Debtor _____ Free Speech Systems - LLC _____
   Name

Case number *(if known)* _____

| **Part 2:** | **Additional Page** |
| --- | --- |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

---

**3.37** Nonpriority creditor's name and mailing address

[redacted]

[redacted]
[redacted]

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.38** Nonpriority creditor's name and mailing address

Skousen, Joel

PO Box 565

Spring City, UT 84662

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.39** Nonpriority creditor's name and mailing address

Wisconsin Dept. of Revenue

PO Box 3028

Milwaukee, WI 53201-3028

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3. 40** Nonpriority creditor's name and mailing address

Watson, Paul

9 Riverdale Road Ranmoor Sheffield

South Yorkshire, United Kingdom S10 3FA

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.41** Nonpriority creditor's name and mailing address

Verizon Wireless

PO Box 660108

Dallas, TX 75266

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

Debtor _____Fres-co System USA Inc_____ Case number *(if known)*_____
                    Name

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | **Amount of claim** |
|---|---|

**3.42** **Nonpriority creditor's name and mailing address**
Miller, Sean

PO Box 763
Wyalusing, PA 18853

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.43** **Nonpriority creditor's name and mailing address**
Spectrum Enterprise aka Time Warner Cable

PO Box 60074
City of Industry, CA 91716

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.44** **Nonpriority creditor's name and mailing address**
Ready Alliance Group, Inc

PO Box 1709
Sandpoint, ID 83864

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3. 45** **Nonpriority creditor's name and mailing address**
One Party America, LLC

6700 Woodlands Parkway Suite 230-309
The Woodlands, TX 77382

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.46** **Nonpriority creditor's name and mailing address**
LCJ Pictures LLC

PO Box 19549
Austin, TX 78760

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 89,882.37

Debtor _____
Name

Case number *(if known)* _____

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.47 Nonpriority creditor's name and mailing address**
Brennan Gilmore

c/o Civil Rights Clinic, 600 New Jersey Ave NW

Washington, DC 20001

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** Litigation Settlement

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ $50,000.00

---

**3.48 Nonpriority creditor's name and mailing address**
Christopher Sadowski

c/o Copy Cat Legal PLLC, 3111 N. University Drive,

Coral Springs, FL 33065

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Asserted copyright

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ $90,000.00

---

**3.49 Nonpriority creditor's name and mailing address**
Neil Heslin

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation claim

Date or dates debt was incurred 2018

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 0.00

---

**3.50 Nonpriority creditor's name and mailing address**
Scarlett Lewis

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred 2018

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 0.00

---

**3.51 Nonpriority creditor's name and mailing address**
Leonard Pozner

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred 2018

Last 4 digits of account number __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

$ 0.00

Debtor _____
     Name

Case number *(if known)* _____

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.52** Nonpriority creditor's name and mailing address
Veronique De La Rosa

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston, TX 77002

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred    2018

Last 4 digits of account number   ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.53** Nonpriority creditor's name and mailing address
Marcel Fontaine

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston, TX 77002

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred    2018

Last 4 digits of account number   ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.54** Nonpriority creditor's name and mailing address
David Wheeler

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred    2018

Last 4 digits of account number   ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.55** Nonpriority creditor's name and mailing address
Francine Wheeler

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred    2018

Last 4 digits of account number   ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.56** Nonpriority creditor's name and mailing address
Jacqueline Barden

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:** Litigation Claim

Date or dates debt was incurred    2018

Last 4 digits of account number   ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

Debtor _____
Name

Case number (if known) _____

| Part 2: | Additional Page |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

---

**3.57** Nonpriority creditor's name and mailing address

Mark Barden

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred ___2018___

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: ___Litigation Claim___

Is the claim subject to offset?
☐ No
☐ Yes

$ __0.00__

---

**3.58** Nonpriority creditor's name and mailing address

Nicole Hockley

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St. STE 2850, Austin, TX 78701

Date or dates debt was incurred ___2018___

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: ___Litigation Claim___

Is the claim subject to offset?
☐ No
☐ Yes

$ __0.00__

---

**3.59** Nonpriority creditor's name and mailing address

Ian Hockley

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred ___2018___

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: ___Litigation Claim___

Is the claim subject to offset?
☐ No
☐ Yes

$ __0.00__

---

**3.60** Nonpriority creditor's name and mailing address

Jennifer Hensel

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred ___2018___

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: ___Litigation Claim___

Is the claim subject to offset?
☐ No
☐ Yes

$ __0.00__

---

**3.61** Nonpriority creditor's name and mailing address

Donna Soto

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred ___2018___

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: ___Litigation Claim___

Is the claim subject to offset?
☐ No
☐ Yes

$ __0.00__

---

Debtor _____
Name

Case number *(if known)* _____

---

| **Part 2:** | **Additional Page** |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | **Amount of claim** |
|---|---|

**3.62** Nonpriority creditor's name and mailing address
Carlee Soto Parisi

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.63** Nonpriority creditor's name and mailing address
Carlos M. Soto

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St. STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.64** Nonpriority creditor's name and mailing address
Jillian Soto-Marino

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.65** Nonpriority creditor's name and mailing address
William Aldenberg

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.66** Nonpriority creditor's name and mailing address
William Sherlach

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

| Debtor | Free Speech Systems LLC | Case number (if known) |
|--------|--------------------------|------------------------|
| | Name | |

## Part 2: Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

**3.67** Nonpriority creditor's name and mailing address
Robert Parker

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred: 2018

Last 4 digits of account number: __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.68** Nonpriority creditor's name and mailing address
Yan Luis

c/o Noor A. Sabb, 280 North Broadway, STE 300

Jericho, New York 11753

As of the petition filing date, the claim is:
Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Basis for the claim: ADA Claim

Date or dates debt was incurred: _____

Last 4 digits of account number: __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.__** Nonpriority creditor's name and mailing address
_____

_____

_____

As of the petition filing date, the claim is:
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred: _____

Last 4 digits of account number: __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.__** Nonpriority creditor's name and mailing address
_____

_____

_____

As of the petition filing date, the claim is:
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred: _____

Last 4 digits of account number: __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

**3.__** Nonpriority creditor's name and mailing address
_____

_____

_____

As of the petition filing date, the claim is:
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred: _____

Last 4 digits of account number: __ __ __ __

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

Debtor _____Free Speech Systems LLC_____     Case number (if known)_____
        Name

| | |
|---|---|

**Part 3:** | **List Others to Be Notified About Unsecured Claims**

4.  **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   **If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| 4.1. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.2. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.3. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.4. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 41. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.5. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.6. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.7. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.8. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.9. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.10. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.11. | Line _____ ☐ Not listed. Explain _____ | __ __ __ __ |

Debtor _____
       Name

Case number *(if known)* _____

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---------|---------------------------------------------------------------|

**5.  Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|--|--|------------------------|
| 5a. **Total claims from Part 1** | 5a. | $ 0.00 |
| 5b. **Total claims from Part 2** | 5b. **+** | $ 995,824.64 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 995,824.64 |

| Fill in this information to identify the case: |
|---|

Debtor name _Free Speech Systems, LLC_

United States Bankruptcy Court for the: _Southern_ District of _Texas_
(State)

Case number (If known): _22-60043_ Chapter _11_

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases 12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | Financial services Agreement<br>For Credit Card Processing and Other Financial Service | ▓▓▓▓▓▓▓▓▓▓▓▓<br>PQPR Holdings Limited LLC: PO Box 19549 Austin TX 78760 - 9549 |
| | State the term remaining | 9 years and 2 months | |
| | List the contract number of any government contract | | |
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | Employment Agreement<br>For Employment of Alex Jones | Alex Jones: 3019 Alvin Devane Blvd Austin TX 78741 |
| | State the term remaining | "At will" Basis | |
| | List the contract number of any government contract | | |
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | Lease Agreement<br>Studio Lease | BCC UBC LLC: 901 S. Mopac Expressway Plaza I, Suite 60, Austin , TX 78746 |
| | State the term remaining | 2 years and 5 Months | |
| | List the contract number of any government contract | | |
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | Service Agreement<br>For Back Ground Checks and Investigative Services | Austin Security and Investigation Solutions LLC: PO Box 2904 Pflugerville, TX 78691 |
| | State the term remaining | 9 Months, Renews Automatically | |
| | List the contract number of any government contract | | |
| **2.5** | State what the contract or lease is for and the nature of the debtor's interest | Building and Land Lease Agreement<br>Warehouse Lease | Expo Glo, LLC: 1717 McKinney Ave, Suite 1900 Dallas, TX 75202-1236 |
| | State the term remaining | Renews Monthly | |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name __Free Speech Systems, LLC__

United States Bankruptcy Court for the: __Southern__ District of __Texas__
(State)

Case number (If known): __22-60043__

☐ Check if this is an amended filing

Official Form 206H

## Schedule H: Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

1. **Does the debtor have any codebtors?**

   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ■ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** / **Mailing address** | | **Name** | **Check all schedules that apply:** |
| 2.1 Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin TX 78741 <br> City State ZIP Code | Niel Heslin | ☐ D <br> ■ E/F <br> ☐ G |
| 2.2 Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin TX 78741 <br> City State ZIP Code | Scarlett Lewis | ☐ D <br> ■ E/F <br> ☐ G |
| 2.3 Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin TX 78741 <br> City State ZIP Code | Leonard Pozner | ☐ D <br> ■ E/F <br> ☐ G |
| 2.4 Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin TX 78741 <br> City State ZIP Code | Veronique De La Rosa | ☐ D <br> ■ E/F <br> ☐ G |
| 2.5 Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin TX 78741 <br> City State ZIP Code | Marcel Fontaine | ☐ D <br> ■ E/F <br> ☐ G |
| 2.6 | Street <br><br> City State ZIP Code | | ☐ D <br> ☐ E/F <br> ☐ G |

**Fill in this information to identify the case and this filing:**

| | |
|---|---|
| Debtor Name | Free Speech Systems, LLC |
| United States Bankruptcy Court for the: | Southern District of Texas |
| | (State) |
| Case number (If known): | 22-60043 |

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☒ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☒ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☒ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☒ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☒ *Schedule H: Codebtors* (Official Form 206H)
- ☒ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule _____*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☒ Other document that requires a declaration __Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements.__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __08/29/2022__　　✗ _W. Marc Schwartz_ (signature)
　　　MM / DD / YYYY　　　　Signature of individual signing on behalf of debtor

　　　　　　　　　　　__W. Marc Schwartz__
　　　　　　　　　　　Printed name

　　　　　　　　　　　__Chief Restructuring Officer__
　　　　　　　　　　　Position or relationship to debtor

# Exhibit 8

CAUSE NO. D-1-GN-22-001610

| | | |
|---|---|---|
| NEIL HESLIN, SCARLETT LEWIS, LEONARD POZN-ER, VERONIQUE DE LA ROSA, MARCEL FONTAINE | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | |
| V. | § § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, FREE SPEECH SYS-TEMS, LLC, PQPR HOLD-INGS, LLC, PLJR HOLD-INGS, LLC, JLJR HOLDINGS LIMITES, LLC, AEJ HOLD-INGS, LLC, AEJ TRUST 2018, | § § § § § § § | |
| Defendants. | § § | 200TH JUDICIAL DISTRICT |

**NOTICE OF FILING OF NOTICE OF REMOVAL TO THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS**

Free Speech Systems, LLC (the "Debtor"), defendant in the above-captioned action, hereby gives notice of and file their Notice of Filing of Notice of Removal to the United States Bankruptcy Court for the Western District of Texas. As set out herein, this matter has been removed to the U.S. Bankruptcy Court for the Western District of Texas. A copy of the Notice of Removal as filed in the U.S. Bankruptcy Court for the Western District of Texas is attached hereto as Exhibit A.

Respectfully submitted,

/s/ F. Andino Reynal
SBN: 24060482
**The Reynal Law Firm, LLP**
917 Franklin Street, Suite 600
Houston, Texas 77002
Tel:  713.228.5900
Fax: 713.820.6981
areynal@frlaw.us


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served pursuant to Rule 21 of the Texas Rules of Civil Procedure through the electronic filing system on the 28th day of October, 2022:


/s/ F. Andino Reynal

F. Andino Reynal



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE, Plaintiffs, v. ALEX E. JONES, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED, LLC, PLJR HOLDINGS, LLC, PLJR HOLDINGS LIMITED, LLC CAROL JONES, DAVID JONES, AEJ HOLDINGS, LLC, AEJ TRUST 2018 Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ADV. PROC. NO. 22 - 06017 |
| DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTOPARISI, CARLOS M. SOTO, JILLIAN SOTO, WILLIAM SHERLACH, ROBERT PARKER, WILLIAM ALDENBERG, Intervenors | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## <u>NOTICE OF REMOVAL</u>

Defendant Free Speech Systems, LLC ("FSS"), pursuant to 28 U.S.C. §§ 1334 and 1452, Federal Rule of Bankruptcy Procedure 9027, and Local Rule of Bankruptcy Procedure 9027(b)(1), hereby files this Notice of Removal of Cause No. D-1-GN-22-001610, from the 250th District Court of Travis County, Texas (the "State Court"), where this action was commenced, to this Court. As grounds for such removal, FSS states as follows:

1

1.      On or about April 6, 2022, Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine original petition in the State Court, thus initiating the "State Court Lawsuit." The State Court Lawsuit names FSS as a defendant.

2.      On July 29, 2022 (the "Petition Date"), FSS filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, pending as Case No. 22–60043 (the "Bankruptcy Case").

3.      FSS timely files this Notice of Removal within 90 days of the Petition Date pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(2).

4.      The United States District Court for the Western District of Texas has original jurisdiction over this action pursuant to 28 U.S.C. §1334(b) as the State Court Lawsuit is "related to" the Bankruptcy Case. Additionally, there the diversity jurisdiction under 28 U.S. Code § 1332.

5.      Removal to this Bankruptcy Court is proper pursuant to 28 U.S.C. § 1452, Federal Rule of Bankruptcy Procedure 9027, and the Order of Reference of Bankruptcy Cases and Proceedings of the U.S. District Court for the Western District of Texas (the "Order of Reference"). The State Court Lawsuit was filed in Travis County, Texas. The U.S. District Court for the Western District of Texas, Austin Division, is the United States district and division embracing that county. The Order of Reference provides that "[a]ll bankruptcy cases and proceedings filed under Title 11 of the United States Code or arising from or related to any case or proceeding filed under Title 11, shall be automatically referred to the bankruptcy judges of this district" subject to exceptions that do not apply here.

6.      FSS consents to entry of final orders or judgment by the bankruptcy court.

Respectfully submitted October 27, 2022.

**FREE SPEECH SYSTEMS, LLC**

*/s/ Ray Battaglia*

Law Office of Raymond W. Battaglia
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218

**COUNSEL TO FREE SPEECH SYSTEMS, LLC, DEBTOR AND DEBTOR-IN-POSSESSION**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing, and (c) the following parties by email on the date of filing:

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Stephen A. Roberts
Stephen A. Roberts, PC
1400 Marshall Ln.
Austin, Texas 78703

*/s/ Raymond W. Battaglia*

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Free Speech Systems LLC | § | Subchapter V |
| | § | |
| Debtor. | § | Case No. 22-60043 (cml) |

# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

In re:

**NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE,**

      **Plaintiffs,**

      **v.**

**ALEX E. JONES, FREE SPEECH SYSTEMS, LLC, PQPR HOLDINGS LIMITED, LLC, PLJR HOLDINGS, LLC, PLJR HOLDINGS LIMITED, LLC, CAROL JONES, DAVID JONES, AEJ HOLDINGS, LLC AEJ TRUST 2019,**

      **Defendants.**

**ADVERSARY NO. 22-06017**

DAVID WHEELER, FRANCINE
WHEELER, JACQUELINE BARDEN,
MARK BARDEN, NCOLE HOCKLEY,
IAN HOCKLEY, JENNIFER HENSEL,
DONNA SOTO, CARLEE SOTOPARISI,
CARLOS M. SOTO, JILLIAN SOTO,
WILLIAM SHERLACH, ROBERT
PARKER, WILLIAM ALDENBERG,

Intervenors.

---

### ORDER APPROVING TEXAS PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND

*(Related to ECF No. ___)*

---

On November 28, 2022, the Texas Plaintiffs (as defined in the Motion) filed their for Abstention and Remand ("Motion"). The Court finds and concludes that cause exists grant the Motion. Accordingly, it is hereby:

**ORDERED** that the All objections to the motion to remand are deemed overruled; it is further

**ORDERED** that pursuant to 28 U.S.C §§ 1334(c)(1) and 1452 (b), the Court abstains from hearing the Adversary Proceeding, and the Adversary Proceeding is hereby remanded to the 200th Judicial District of Travis County from which it originated; and is further

**ORDERED** that upon entry of this Order, the Adversary Proceeding is hereby closed.

### ###